A. L. PERKINS *v.* CHICAGO, ST. LOUIS AND NEW ORLEANS RAILROAD COMPANY.

1. **RAILROAD.** *Action for injury to passenger. Freight train. Negligence. Sect. 1054, Code 1880, construed.*

Where, in an action by a passenger for damages against a railroad company for injuries received as such passenger, it is shown that the train on which the plaintiff was a passenger was a freight train not intended for both passengers and freight, the plaintiff must show gross negligence on the part of the servants of the defendant before a recovery can be had in view of sect. 1054 of the Code of 1880, which provides that, " for injury to any passenger upon any freight train not being intended for both passengers and freight, such company shall not be liable except for gross negligence or carelessness of its servants."

2. SAME.  *Freight train not intended for both passengers and freight.  Definition.*
A train which is strictly a freight train with only the appliances and accomoda-
tions of such, cannot be said to be intended for both passengers and freight,
even though all persons be permitted to become passengers by going into the
conductor's caboose.

APPEAL from the Circuit Court of Madison County.
Hon. S. S. CALHOON, Judge.

On the 3d day of November, 1881, the appellant purchased
a ticket from the appellee and took passage on a freight train
on appellee's railroad from Jackson to Madison Station.  The
train stopped at Madison Station, the engine being opposite
the station, and the conductor's caboose, in which appellant
was riding, was something over a hundred yards from the plat-
form of the station.  No announcement was made by the con-
ductor or any of the railroad employees that Madison had
been reached.  After the train had thus stood some time, it
pulled out, failing to stop as the caboose passed the station,
and the appellant having continued in the conductor's caboose,
sent for the conductor, and demanded that she be taken back
to the station.  The conductor stopped the train " and offered
to carry the appellant to Canton, and return her free of charge
to Madison Station," but declared that it was impossible for
him to push back to Madison, as he had a heavily loaded train,
and there was a passenger train in his rear.  The conductor
was polite throughout, and while conversing with the appellant,
was on top of the train holding a brake to steady the train.
Appellant declined to go on to Canton, and got off the train
where it had stopped, at Montgomery's Crossing, about one
mile north of Madison.  She remained there for some time,
until a conveyance could be procured, and went to her home.
She brought this suit against the railroad company for $15,000
damages.  The court below instructed the jury that the facts
in the case did not constitute gross negligence, and that if
they believed from the evidence that the plaintiff took passage
" upon a freight train merely," then that defendant would be
liable only for gross negligence.  Sect. 1054 of the Code of

1880 provides that, "for injury to any passenger upon any freight train not being intended for both passengers and freight, such company shall not be liable except for gross negligence or carelessness of its servants." The jury found a verdict for the defendant, and from the judgment of the court below the plaintiff appealed.

*R. C. Smith*, for the appellant.

Sect. 1054 of the Code of 1880 did not lessen the usual and ordinary duties of the conductor of this train in which the plaintiff was riding, for it was not exclusively a freight train, but was both a freight and passenger train, and hence did not come under the exception of said sect. 1054. And we think this was the error the court below made, in bringing this train within the exception of said section. By the instructions for defendants, the court has charged the jury that this was a freight train exclusively, and that the defendants are liable only for gross negligence. By the first instruction the jury were told that there was no gross negligence on defendant's part. By second instruction they were told in effect that this was a freight train, and exclusively a freight train. Now, negligence is the opposite of care and prudence. The failure to use the care and means reasonably necessary to avoid injury is negligence. This case is one of gross negligence, for the defendants did not use the care which is required of them in every case towards their passengers.

*Robert Shotwell*, on the same side.

The train was not a freight train within the meaning of sect. 1054, Code 1880. The evidence is that this particular train customarily and usually carried passengers. How are we to know whether a train is intended for both freight and passengers? Is the test to be simply the name of the train as "freight train" or "passenger train," or is the test to be the fact that a passenger coach is attached to a so-called "freight train?" The true test is, whether the train usually carried passengers. It would be absurd to say that a train carrying passengers could escape liability by failing to attach a passenger coach.

The train in this case was evidently such a one as was intended for both passengers and freight within the meaning of the proviso, and the liability of the road for negligence is shown from the evidence.  40 Miss. 374 ; 42 Miss. 607 ; 44 Miss. 406 ; 50 Miss. 316 ; 54 Miss. 503.

*W. P. & J. B. Harris,* for the appellee.

The plaintiff was travelling on a regular freight train, not intended for passengers, although passengers were allowed to ride on it.  The company then could only be made liable for gross negligence.  Code 1880, sect. 1054; *Seems' Case,* 59 Miss. 456.  It was not what is known as a mixed train, intended for both freight and passengers.  It was in no sense a passenger train.  There is no proof of negligence.  The train stopped, as it was usual for freight trains to stop at stations.  It was not the duty of the conductor to put her off.  See 42 Miss. 607.  The fact of her sickness while on the train can cut no figure in this case.  She did not give the conductor notice.  See 42 Miss. 607.  That she was subjected to inconvenience was a natural consequence of the mode of conveyance which she had chosen.  This was a regular freight train, and plaintiff must have known when she got on, that none of the conveniences for ingress and egress, which passenger trains have, were to be had on this train.  The fact that passengers were carried on this train does not take it out of the statutory exception or make it a passenger train.  The statutory exception was made to meet just this case, and comtemplated the carriage of passengers on freight trains as such.  The facts of the case certainly entitle us to an affirmance.

CAMPBELL, C. J., delivered the opinion of the court.

The train on which the appellant was a passenger was a "freight train, not being intended for both passengers and freight," within the meaning of sect. 1054 of the Code of 1880, and the action of the Circuit Court upon the instructions was correct.  The latter part of that section is a substitute for

sect. 2 of the act of March 15, 1876 (Acts 1876, p. 265), which employed the terms "mixed" or "accommodation" trains, "run for the accommodation of both passengers and freight." A train which is strictly a freight train, with only the appliances of such a train, on which persons are not sought to be induced to take passage by the offer of other accommodations than are afforded by freight trains, cannot be said to be intended for both passengers and freight, although all persons may become passengers by going into the conductor's caboose. They who take passage on such a train cannot expect, and have no right to demand, the conveniences and attention required with respect to passenger trains or those intended by the carrier for both freight and passengers.

Judgment affirmed.