ILLINOIS CENTRAL RAILROAD COMPANY v. ALICE WHITE.

(52 South. 449.)

ALICE WHITE v. ILLINOIS CENTRAL RAILROAD COMPANY.

(55 South. 593.)

TWO DECISIONS IN SAME CASE.

1. RAILROADS. *Passengers. Freight train. What is. Code* 1906, § 4054.

Under Code 1906, § 4054, limiting the liability of a railroad company for injuries to passengers on freight trains, not intended for both freight and passengers, an ordinary freight train carrying a caboose is "not intended for both passengers and freight," although all persons who wish to do so are permitted to travel in the caboose and it is provided with seats to which such persons are assigned.

2. SAME. *Same.*

A freight train "not intended for both passengers and freight," within the meaning of the statute, is a regular freight train on which passengers are invited to travel, having for their convenience a caboose, way-car or passenger coach attached, without other equipments or appliances peculiar to passenger trains, and on which passenger business is subordinated to freight business and the paramount object is the carriage of freight and not passengers.

FROM the Circuit Court of Choctaw county.

HON. GEORGE A. McLEAN, Judge.

Mrs. White, appellee, on the first appeal and appellant on the second, was plaintiff in the court below; the railroad company, appellant on the first appeal and appellee on the second, was defendant there. From a judgment in plaintiff's favor defendant appealed (the first appeal) to the supreme court. The facts are stated in the opinions of the court.

*Mayes & Longstreet,* for appellant railroad company.

The judgment appealed from should be reversed for the reason that no evidence whatever was submitted to the jury to show that the jolting of the car about which the plaintiff complained was caused by the gross negligence of the company.

Argument might be made that there is no evidence whatever of any negligence of any sort; that inasmuch as eye-witnesses, including plaintiff, gave account of the whole affair, the statutory presumption did not apply; and, therefore, that the plaintiff's case must fall for want of any proof of even small negligence; which point was made in the court below. But we prefer to raise the case on the single proposition that there was no evidence whatever of gross negligence, and in this case that recovery could only be had on account of negligence shown of that class.

The case is controlled by the case of *Perkins v. Chicago, etc., R. Co.,* 60 Miss. 726; and *Yazoo, etc., R. Co. v. Humphrey,* 83 Miss. 721.

Even conceding that the statutory presumption would apply, the statute raises a presumption only of negligence, and it does not raise a presumption of gross negligence. If, therefore it be necessary to show gross negligence, the case fails for want of any such proof. *Trail v. Railroad Co.,* 25 South. 853.

Was this such a car in which this woman was riding as to come within the statutory rule laid down in the *Perkins case* quoted above? (In passing the court will note that that statute has been re-enacted into the present code with the interpretation placed upon it.) The proof in this case shows, without substantial difference, that it was such a car.

The car is described as "a caboose known as a way car. That car is divided into two partitions, and one is where the train crew carry their tools, lanterns and other necessary equipment which is carried on the caboose in case of accident, such as frogs, chains, and the other part of the caboose is where people would

ride, and in that part of the caboose also is carried chains and brasses and coupling pins, etc., underneath the seats."

This testimony is uncontradicted. It is true that the plaintiff in talking about this car calls it a passenger car, and says that it was not the ordinary caboose. Her calling it a passenger car is simply her attempt to describe it and when she says it was not the ordinary caboose she simply says that it was not that sort of caboose that she was accustomed to see. It was a special sort of car which the railroad people know and describe as a way car.

It is true, also, that the conductor of the train, on cross-examination, testified that passengers were permitted to ride in that car and expected to do so, all of which amounts to nothing more nor less than what was true in the *Perkins case.* Passengers were invited to ride in the ordinary caboose, and permitted to do so.

The simple point is that this train was not the ordinary mixed train which is composed partly of freight cars and regular passenger cars and which are run equally for the accommodation of both classes of traffic. They are familiar trains. It is to that sort of a train that the statute alludes when it speaks of trains intended both for passengers and freight. It is commonly known that the trains of the railroad company are divided into four different classes; the regular passenger trains, the regular and exclusive freight trains, the mixed trains, and the local freight trains on which there is a caboose of a more or less rough character, in which passengers are allowed to ride. It was the last sort of a train that was dealt with in the *Perkins case;* and it was that sort of a train which, according to the clear testimony in this case, the plaintiff was riding on (she herself calls it in her testimony local freight), and it is that sort of a train as to which the rule is that the company is liable to a passenger only for gross negligence.

This point was made on the trial below. When the case was

closed a motion was made to exclude on various grounds, one of which was, as expressly stated, that "the evidence does not show that the defendant was guilty of any gross negligence." This motion to exclude was overruled.    The defendant thereupon requested a peremptory instruction, and that was denied.

Certain instructions were then given both for the plaintiff and the defendant; the cause was tried by the jury, with a verdict for plaintiff; and thereupon the defendant made a motion for a new trial, one ground of such motion, as stated, being the ·sixth, which is to the effect that "there is no proof that defendant or its servants were guilty of gross negligence in the man-.agement of its train of cars."

Therefore, it clearly appears that this point of gross negligence was made and insisted upon throughout the trial and in ·the motion for a new trial in the court below.    It is not made in this court for the first time.

For that reason the rule laid down in the *Schraag case,* and lately affirmed and applied in the *Sumrall case,* does not apply · .here.

*Alexander & Alexander* and *Daniels & Adams,* for appellee, Mrs. White.

·We recognize the principle so well established and set out in the case of *Railroad Co. v. Humphrey,* 83 Miss. 721, that a passenger on a mixed train assumes the inconveniences and risks usually reasonable and incident to transportation on such trains. However a discussion of this principle is not pertinent in this case for the reason that the record shows appellee to have been fully aware of the inconvenience attending travel on this particular train, and that she used such reasonable and ordinary care and prudence as any reasonable person would have used in traveling on a mixed train.

The facts are : Mrs. White bought a ticket at Kosciusko to Vaiden, Mississippi, boarded the passenger car or way car at-

tached to the freight cars, gave the conductor her ticket which was properly punched and returned. She traveled as far as Durant, where she had to change cars, and when the train stopped at or near the depot, she attempted to get off and was thrown down before she got off the platform. Surely she did not in all of this journey do anything out of the ordinary or unreasonable, and at all times was fully aware of the fact that she was on a mixed train, and appreciated the inconveniences attending such travel.

The *Humphrey case,* cited above, is wholly different from the case at bar. Mrs. Humphrey is shown in that case to have gotten up and stood in the aisle of the caboose while the engine was switching when a box car was knocked down on the caboose, an act that was purely incidental to the running of a local freight train. In this case there is no contributory negligence. In fact, such was not pleaded, and the *Humphrey case* has no bearing. Before passing from the discussion of the *Humphrey case,* we refer the court to the following from Judge TRULY's opinion: "The same decree of care is demanded by law of the railroad company in the carriage of passengers on mixed as upon regular passenger trains."

Now particularly as to appellee's failure to show gross negligence: The statute is simple and positive. Simple negligence will entitle one injured to recover damages while injured on a train except "a freight train, not intended for both passengers and freight." The question then resolves itself into one purely of fact, and while all of the evidence was carefully summed up in arguments to the jury, it might be well to refer to that part which goes to establish the identity of this particular train. Appellee testifies that she entered the passenger coach, or the coach at the end of the train, in which there were already some passengers and which was not an ordinary caboose such as are attached to all freight trains. It is a matter of common knowledge that passengers have been allowed to ride on cabooses, and

it is also a matter of common knowledge that for several years it has been strictly against the rules of this particular railroad company for passengers to ride on freight cabooses. It is further a matter of common knowledge that on branch lines for short runs it is very common to run the local trains composed of both passenger cars and freight cars. When appellee boarded the train in question and during her journey to Durant there were as many as four or five passengers in this car. The conductor performed the ordinary duties of a passenger conductor in receiving fares and tickets, and in every way the train was treated as a mixed train. Going back, it will be noted that the agent suggested, or rather invited appellee to take that train to Durant, as she had been left behind by the other passenger.

One witness testified that this train was a regular local passenger freight, upon which passengers were carried regularly. The car attached was an ordinary way car, which, as a matter of fact, is not an ordinary caboose, but is more of a passenger car with a small partition for workmen and tools.

If the train had not been intended for passengers, passengers should not have been permitted to board it, and since they were permitted to ride and did ride this train does not come within the statute as not intended for both passengers and freight, and whether or not a train is intended for freight or passengers depends upon the circumstances of the case and is a fact for the jury.

Argued orally by *L. M. Adams,* for appellee.


SMITH, J., delivered the opinion of the court on the first appeal.

Appellee was a passenger on one of appellant's local freight trains, and was going from Kosciusko to Durant. Upon arriving at Durant, and in attempting to alight from the platform of the car in which she was traveling, the train was moved or jerked, causing her to fall and become injured. At the close

of the evidence appellant requested and was refused a peremptory instruction, and the cause was submitted to the jury, resulting in a verdict and judgment for appellee.

Code 1906, § 4054, provides: "But for injury to any passenger upon any freight train, not being intended for both passengers and freight, the company shall not be liable, except for the gross negligence or carelessness of its servants." It is not contended that any gross negligence was shown on the part of appellant's employes; but the contention is that the train upon which appellant was traveling was intended for both passengers and freight. This train was strictly a freight train, with only the appliances of such, but had attached to it a caboose, or way car, in which all persons desiring so to do were permitted to travel. One of the witnesses stated, without contradiction: "That train, the same as other local freight trains, is equipped with a caboose, known as a 'way car.' That car is divided into two partitions, and one is where the train crew carry their tools, lanterns, and other necessary equipment, which is carried on the caboose for use in case of accident, such as frogs and chains, and the other part of the caboose is where people would ride, and in that part of the caboose, also, is carried chains and brasses and coupling pins and so forth, underneath the seats." Such a train cannot be said to be intended for both passengers and freight, as was held by this court in *Perkins v. Chicago, St. Louis & New Orleans R. Co.*, 60 Miss. 726, wherein this court said: "A train which is strictly a freight train, with only the appliances of such a train, on which persons are not sought to be induced to take passage by the offer of other accommodations than are afforded by freight trains, cannot be said to be intended for both passengers and freight, although all persons may become passengers by going into the conductor's caboose."

The peremptory instruction requested by appellant ought to have been given.

*Reversed and remanded.*

After the remand of the cause the case was again tried in the circuit court and a judgment rendered, predicated of a peremptory instruction, for the defendant, from which the plaintiff appealed to the supreme court, the second appeal. The same counsel appeared for the respective parties.

[The briefs of counsel on the second appeal so far as they dealt with the law of the case were not materially variant from their briefs on the first appeal; they dealt more largely with the facts, the plaintiff's counsel insisting that the case was materially different in its facts on the two appeals while defendant's counsel urged that there was no material difference.]

ANDERSON, J., delivered the opinion of the court on the second appeal.

This case was here on appeal once before. On the former appeal it will be found reported under the style "Illinois Central Railroad Company v. White," *ante,* 91, 52 South. 449. On that appeal judgment was reversed and case remanded on the ground that no liability was shown on the part of the railroad company, the court holding that the jury should have been instructed to return a verdict in its favor. On the second trial, at the conclusion of the testimony, the court instructed the jury at the instance of appellee to return a verdict in its favor, which was done and judgment entered accordingly, from which appellant prosecutes this appeal.

It is argued with great earnestness on behalf of plaintiff that the facts developed in this record are materially different, from those shown on the first trial; that on the record here now, it was a question for the jury whether the train on which appellant was injured was one "being intended for both passengers and freight," in the sense of the language used in Code 1906, § 4054. After a most careful examination of the records on both appeals, we find there is no material difference in the facts as

developed on the second trial from those shown on the first. The train on which plaintiff was injured was a regular local freight train, equipped with the ordinary appliances and conveniences of a local freight train, except that the car attached to it for the use of passengers was what is known as a "way car" with compartments for passengers, baggage, train-men, and the tools and implements used in connection with the operation of a local freight train. It was neither a regular passenger train nor a "mixed or accommodation train." It is true that plaintiff in her testimony speaks of it as an "accommodation train," but she also describes the character of the train; and her evidence taken in connection with all the other evidence in the case shows without material conflict that it was a local freight train and not an "accommodation or mixed train." It follows that there was no error in directing the jury to return a verdict in favor of the railroad company.

It is argued with great ability and show of reason on behalf of plaintiff (and it is so contended in another case now in the consultation room involving this same question), that any freight train whatever which has attached to it a car for passengers to ride in, and on which passengers are invited to travel by the railroad company, is a freight train "intended for both passengers and freight." We are constrained to make an attempt to further elucidate the intent and purpose of the statute involved.

The last clause of the statute (Code 1906, § 4054), which is controlling in this case is in derogation of the common law. In determining the true interpretation of such a statute, it is a material aid to have in view the common law as it existed when the statute was enacted, in connection with the origin and history of the statute. According to the common law the carrier owes the passenger the utmost degree of care for his safety regardless of the character of the car or train on which he is being carried. There is no distinction in this respect between

freight trains and regular passenger trains, provided such freight trains are used for the carriage of passengers. At common law there is only one class of trains in the operation of which the carrier is relieved from the exercise of the utmost degree of care for the safety of persons traveling on such trains, and that is those trains which are not intended for and which do not carry passengers. Persons riding on such trains contrary to the rules of the carrier are trespassers, and even when riding by permission of the trainmen in charge of such trains, are bare licensees. 33 Cyc. 763, 764. In case of injury to persons so carried, the carrier is not liable unless such injury is caused by its wilful or intentional wrong or gross negligence. 33 Cyc. 815. In this condition of the common law the legislature enacted chapter 155, Laws of 1876, page 264, as follows: ·

"Whereas, Certain railroad companies, doing business in this state, now refuse to carry passengers upon their freight trains, on account of the strict legal liability attaching to carriers of passengers; and,

"Whereas, Such refusal on the part of said railroads to carry passengers upon their freight trains, results, generally, in great inconvenience, annoyance and loss to the citizens located upon the line of said roads; therefore,

"Section 1. Be it enacted by the legislature of the state of Mississippi, That all railroad companies, running trains in this state, shall hereafter carry upon their freight trains, all passengers who shall desire to ride thereon, and who shall conform to the rules of said railroads applying to passengers upon passenger trains in relation to purchase of tickets, and so forth, and such passengers upon freight trains shall be furnished with the best accommodations that said freight trains may have at that time that such passengers may apply for passage; Provided, That railroads shall not be required to furnish passengers upon freight trains any additional accommodations to those which freight trains ordinarily have.

"Sec. 2. Be it further enacted, That, in case of damage or injury to any passenger or passengers, upon any freight train, the railroad company shall not be liable therefor, except upon proof of fraud, malice or gross negligence on the part of the company, its agents or employes; Provided, That the provisions of this section shall not apply to 'mixed' or 'accommodation' trains, so called, which are now run for the accommodation of both passengers and freight.

"Sec. 3. Be it further enacted, That any railroad company who shall refuse to carry upon any freight train, any person applying for passage thereon, who shall conform to the rules of the railroad prescribed for passengers upon passenger trains, shall forfeit and pay to the person so refused the sum of fifty dollars, to be recovered by action before any court of competent jurisdiction.

"Sec. 4. Be it further enacted, That the provisions of this Act shall not apply to through freight trains run by telegraphic order."

This statute was revised and brought forward into the Code of 1880, forming section 1054 of that code which appears in the same language in Code 1892, § 3557, and Code 1906, § 4054, which is as follows: "Every railroad company shall be liable for all damages which may be sustained by any person in consequence of the neglect or mismanagement of any of its agents, engineers, or clerks, or for the mismanagement of its engines; but for injury to any passenger upon any freight train not being intended for both passengers and freight, the company shall not be liable, except for the gross negligence or carelessness of its servants."

In *Perkins v. Chicago, etc., R. Co.,* 60 Miss. 726, Judge CAMPBELL, who prepared the original draft of the Code of 1880, speaking for the court, said:

"The train on which the appellant was a passenger was a 'freight train, not being intended for both passengers and

freight,' within the meaning of section 1054 of the Code of 1880, and the action of the circuit court upon the instructions was correct.  The latter part of that section is a substitute for section 2 of the act of March 15, 1876 (Laws 1876, p. 265), which employed the terms 'mixed' or 'accommodation' trains, 'run for the accommodation of both passengers and freight.'  A train which is strictly a freight train, with only the appliances of such a train, on which persons are not sought to be induced to take passage by the offer of other accommodations than are afforded by freight trains, cannot be said to be intended for both passengers and freight, although all persons may become passengers by going into the conductor's caboose.  They who take passage on such a train cannot expect, and have no right to demand, the conveniences and attention required with respect to passenger trains or those intended by the carrier for both freight and passengers."

It will be noted that the court says in that case that the latter part of Code 1880, § 1054, is a substitute for section 2 of the Act of 1875, *supra.*

In the case of *Illinois, etc., R. Co. v. Trail,* 25 South. 863, the court speaks of the train on which the injury occurred as a through freight train.  We have examined the record in that case and find that it was a freight train which did not stop at all stations, but the appellee Trail testified that it carried passengers, tickets were sold for it, and he paid the conductor on this occasion because he had not time to purchase a ticket, and that it had attached to it a regular passenger caboose.  The court held that the railroad was only liable for gross negligence because the train in question was not "designed to carry passengers."  We understand the court to hold in *Perkins v. Railroad Co., supra,* that the proviso to section 2 of Code 1876 means the same thing as the latter part of section 1054, Code 1880 (sections 3557, Code 1892, and 4054, Code 1906). The evident purpose of the legislature in the adoption of this

statute was to relieve railroad companies from the exercise of the highest degree of care as to passengers on all freight trains whatsoever, except "mixed or accommodation trains," which were left as at common law.

Since the construction put on this statute in *Perkins v. Railroad Co., supra,* it has been twice re-enacted in the same language in the Codes of 1892 and 1906. The rule is that where a statute has been construed by the highest court of a state and afterwards re-enacted in substantially the same terms, the legislature by such re-enactment, adopts along with the statute, such construction.

What is intended by the language "intended for both passengers and freight," or "mixed or accommodation trains," which are synonymous in meaning? The court knows what a "mixed or accommodation train" is, for everybody knows; it is a matter of common knowledge of which the court takes judicial notice. In section 2, act of 1876, *supra,* the words "mixed or accommodation" are put in quotations and are referred to as "so called," showing that it was a matter of general understanding at that time what class of trains was intended to be covered by the proviso to that section. A "mixed or accommodation train" is a train equipped and having the appliances and facilities suited for the carriage of passengers as well as freight. Its purpose and business is as much the one as the other. In its arrangements, the safety of passengers is as much looked to as the carriage of freight. It usually has two or more coaches for passengers, and separate compartments or coaches for the races, and a baggage compartment or car, etc., and runs on a regular schedule, and subordinates its freight business to the passenger business to the extent necessary to make connections with other passenger trains on its own line and those on connecting roads, and it stops opposite stations for the convenient ingress and egress of passengers. On the other hand a freight train not intended for both passengers and freight, or

which is not a "mixed or accommodation train" in the meaning of this statute, is a regular freight train on which passengers are invited to travel, having for their convenience a caboose, way car or passenger coach attached, but has none of the other equipment or appliances of a regular passenger train beyond what all freight trains have, and in making its schedule does not make connection with other trains on its line or those of connecting carriers if prevented by the proper handling of its freight business. In other words, it is a train on which the passenger business is subordinated to that of the carriage of freight; a train the paramount object of which is the carriage of freight and not of passengers.

It might be in some cases a question of fact for the jury whether a given train is one intended for both passengers and freight within the meaning of this statute. But where the evidence shows without conflict, as it does in this case, that the train in question was not a "mixed or accommodation train," but a regular local freight train carrying passengers as a mere incident, there is no question for the jury.

*Affirmed.*