MRS. ALICE WHITE v. ILLINOIS CENTRAL RAILROAD COMPANY.

[55 South. 593.]

1. CARRIERS. *Local freight trains.  Passengers.  Gross negligence.*

   A regular local freight train, equipped with the ordinary appliances and conveniences of a local freight train, except that the car attached to it for the use of passengers was what is known as a "way car" with compartments for passengers, baggage, trainmen and tools used in connection with the operation of a local freight train, is neither a regular passenger train, nor a "mixed or accommodation train" within Code 1906, section 4054, limiting the liability of carriers for injuries to passengers.

2. PASSENGERS. *Carriers.  Common law duty.*

   At common law there is only one class of trains in the operation of which the carrier is relieved from the exercise of the utmost degree of care for the safety of passengers on such trains and that is those trains which are not intended for and do not carry passengers.

3. SAME.

   In case of injury to persons riding on such trains, the carrier is not liable unless such injury is caused by its willful or intentional

wrong or gross negligence as persons riding on such trains contrary to the rules of the carrier are trespassers and even when riding by permission of the trainsman in charge of such trains are bare licensees.

4. STATUTE. *Re-enactment. Construction.*

Where a statute has been construed by the highest authority of a state and afterwards re-enacted in substantially the same terms, the legislature by such re-enactment adopts, along with the statute, such construction.

5. JUDICIAL KNOWLEDGE.

The courts know what a "mixed or accommodation train" is, as it is a matter of common knowledge of which the courts take judicial cognizance

6. MIXED OR ACCOMMODATION TRAIN. *Definition.*

"A mixed or accommodation train" is a train equipped and having the appliances and facilities suited for the carriage of passengers as well as freight. Its purpose and business is as much the one as the other. In its arrangements the safety of passengers is as much looked to as the carriage of freight. It usually has two or more coaches for passengers and separate compartments or coaches for the races, and a baggage compartment or car, etc., and runs on a regular schedule, and subordinates its freight business to the passenger business to the extent necessary to make connections with other passenger trains on its own line and those on connecting roads, and it stops opposite stations for the convenient ingress and egress of passengers.

7. FREIGHT TRAIN. *Definition.*

A freight train is not intended for both passengers and freight within the Code 1906, section 4054, limiting the liability of carriers for injuries to passengers on such trains, is one on which passenger business is subordinated to the carriage of freight and is a mere incident thereto.

APPEAL from the circuit court of Choctaw county. HON. G. A. McLEAN, Judge.

Suit by Mrs. Alice White against the Illinois Central Railroad Company. From a judgment for defendant, plaintiff appeals.

The facts are sufficiently stated in the opinion of the court.

*Daniel & Adams,* for appellant.

When appellant had concluded her evidence in the court below, appellee made a motion for a peremptory instruction, which was granted by the court.

This case has been before this court on appeal by the railroad company from a judgment in favor of appellant, and was reversed because the evidence failed to show that the train on which appellant was riding, when she was injured, was intended for both passengers and freight (reported in 52 So. 449); but appellant has quite a different record here on this point from that presented in the former appeal.

The evidence for appellant shows conclusively that the train in question was a mixed, local or accommodation train which has been running between Durant and Aberdeen for many years, and has all these years been used by the railroad company for handling local freight and passengers; that two of these accommodation trains of like character, are, and have been, used for many years by appellee on its line between Durant, Mississippi, and Aberdeen, Mississippi, one going from Durant to Aberdeen and the other from Aberdeen to Durant each day, each train making the return trip on the day following; that each of the trains when making the run from Aberdeen to Durant is known as No. 291, and from Durant to Aberdeen as No. 292. On page forty-three of the record appears a copy of the bulletin board of appellee railroad company as posted at the depot in the town of Ackerman, as required by section 4857 of the Code of 1906. This bulletin board shows the said accommodation trains, Nos. 291 and 292, marked thereon in the same manner as the two regular passenger trains; and it was agreed that the train in question, No. 291, going south, was posted on the bulletin board at the time of the injury and has been up to the present time. It further appears from this bulletin board that on the day of the trial, the said train was marked ''On Time'' on said bulletin

board, in the same manner as the two regular passenger trains.

On motion of appellee, in which request appellant joined, the coach attached to said train No. 291 was examined and inspected by the jury, and considerable evidence was taken, while in and about the said coach, as to its construction, equipment, furnishings, etc. It was agreed that the coach examined was the same kind and character of car the appellant was riding in when she received the injury complained of. By further evidence taken in this connection, it was shown that the coach in question is about fifty feet long; that it was divided into three compartments, to-wit: a passenger compartment about twenty-nine and one-half feet long, including the end platform; a baggage compartment about twelve feet long with sliding doors on each side of the coach; and another compartment, six or seven feet long, in which was kept tools and other equipment for the train crew. In the passenger compartment of the coach there was a heating stove, closet, water cooler, racks for bundles, etc.; cuspidors, etc.; and the seats were arranged and placed on either side of the coach with an aisle between, the seats being cushioned, reversible and large enough to accommodate two persons just as in a regular passenger coach, there being windows at each seat; and ventilators in the upper part of the coach (some open and others closed at the time); the interior of the passenger compartment being in all particulars like a regular passenger coach, except not as nicely finished and not as long, as stated by the witnesses; and there being at the time four regular passengers seated in the said passenger compartment. There was posted in said passenger compartment of said coach the following notice: "Ten dollars fine for spitting on the floor." It is evident that appellee, in providing cuspidors for said passenger compartment of said coach and in posting the said anti-spitting notice, was endeavoring to comply with section 4856

of the Code of 1906, which requires all railroad com-
panies to furnish each passenger reception room and
passenger coaches with a suitable number of cuspidors,
and to post a notice in large bold type in a conspicuous
place, "ten dollars fine for spitting on the floor." Also,
the following very significant notice was posted on the
door leading from the passenger compartment into the
baggage room, to-wit: "Passengers not allowed in the
baggage room."

Plaintiff introduced C. J. Dean, a photographer, who
testified to having made certain photographs of the
coach, attached to one of the said accommodation trains,
two days before the trial, to the introduction of which
photographs defendant objected, which objection was sus-
tained by the court, and which action of the court we
submit was erroneous. It is true these photographs were
of no material benefit to plaintiff, as evidence before
the jury, on this trial because the jury had made a per-
sonal inspection of the coach, which it was agreed was
the same kind and character in which said plaintiff was
riding when she was injured; but the same opportunity
might not be available at another trial; and we think
the photographs were sufficiently identified (as being
photographs of the identical coach examined, or one of
the same kind and character, and certainly as the coach
attached to one of the said local trains, both of which
coaches were shown to be of the same kind and character
in construction, appearance, etc.) to make their intro-
duction as evidence proper. At plaintiff's request, the
said photographs were sent up with the record in this
case, and they speak for themselves and show conclu-
sively · that the coach attached to said accommodation
train was no common conductor's caboose (as was stated
by the court in its former opinion from the uncontra-
ditced evidence of the witness Magee); but that judging
from the outside appearance of the coach, as shown by
the said photographs, as well as from the interior con-

struction, equipment, and furnishing of the said coach, as shown by the testimony of several witnesses, it was a coach intended for passengers. Plaintiff further offered in evidence a number of issues of several newspapers, some of which were excluded by the court to which exception was duly taken, which said several papers advertised the schedule of said railroad company on the line from Durant to Aberdeen, showing local trains Nos. 291 and 292 along with the regular passenger trains, and that all trains scheduled carried passengers.

Further evidence of the purpose and intention of the said local trains with reference to carrying passengers is shown by the evidence to the effect that said trains carried not only passengers. but also carried and had provisions made for the carrying of passenger's baggage. It is shown by the testimony of the witnesses, who gave description of the coach, that there was a baggage room or compartment, with sliding doors on either side of the said coach into the said baggage compartment; and it was recognized by the railroad company as a baggage room by virtue of the notice on the door leading from the passenger compartment into the said room, to-wit: "Passengers not allowed in the baggage room." It conclusively appears that passenger's baggage was checked for this train and transported thereon in the same manner as on a regular passenger train. When plaintiff was making the journey from Kosciusko to Durant on said train at the time she was injured she had her trunk checked for transportation on said train.

It is further shown by the testimony of plaintiff's witnesses and herself that they had each and all frequently ridden on the said local trains Nos. 291 and 292; and that said trains were taken and considered by the said several witnesses and by the general public as trains intended for passengers, and that said trains have been used for many years by the said railroad company, and so considered by the public to be intended, for car-

rying and transporting passengers and their baggage, in the same manner as the regular passenger trains, with the exception that when it was equally convenient to take passage on the regular passenger trains, the witnesses did so on account of the fact that the trip could be made more rapidly and that better accommodations were pro-vided on the regular passenger trains.

It is further in evidence that the said defendant rail-road company runs other trains on its line between Du-rant and Aberdeen, in addition to the two regular pas-senger trains and the said local trains Nos. 291 and 292, which said other trains are strictly freight trains, with only the appliances of a freight train, having attached thereto a common conductor's caboose, which trains are used exclusively for carrying freight, and of course could not be said to be intended for passengers.

In the opinion rendered by the court in this case on its former appeal, 52 So. Rep. 449, the court cited the case of *Perkins* v. *Chicago, St. Louis & New Orleans Railroad Co.,* 60 Miss. 726, wherein this court said: "A train is strictly a freight train, with only the appliances of such a train on which persons are not sought to take pas-sage by the offer of other accommodations than are af-forded by freight trains, cannot be said to be intended for both passengers and freight, although all persons may become passengers by going into the conductor's ca-boose;" and we do not here question the correctness of the former decision of this case by the court, in view of the Perkins case, and in the light of the record in this case, on this point, when formerly before this court; but we earnestly contend that appellant has here a wholly different record, as to the train being intended for pas-sengers and freight, from that contained in the record on the former appeal in this case. We submit that there is no escape from the position that said plaintiff had, at least, enough evidence on this point to make it a question of fact for the jury.

The train had arrived at Durant, its terminus: the conductor had announced the station; the train had come to a stand-still with the passenger coach near the depot; the other passengers, four or five in number, had preceded appellant out of the coach; and while appellant was endeavoring to alight from the coach, the train was suddenly moved or jerked, and in this manner appellant was thrown from the steps of the coach to the ground, and thus received the injury complained of. It is true that the authorities hold, and we think properly so, that when plaintiff took passage on said local train, she subjected herself to the inconvenience and annoyance usually and reasonably incident to travel upon such a train; but appellee railroad company certainly owed her the duty not to negligently injure her, while she was endeavoring to leave the coach, which act was necessary for her to do when the train had arrived at its terminus.

In the light of the whole record here, we respectfully submit that appellant's evidence was sufficient on all points to put the case to the jury; that the trial court committed fatal error in granting the peremptory instruction; and that therefore the case should be reversed.

*Alexander & Alexander,* for appellant.

Counsel for appellant class the trains operated by the Illinois Central Railroad Company and other railroad companies into three classes, viz:

1. Passenger trains.
2. Freight trains.
3. Mixed trains.

We agree that this can be considered a general classification. Counsel, however, endeavor to place the train in this case in the class of freight trains, that is, "an ordinary freight train, with the addition of a caboose or way car, whichever you may please to call it; and which

train is ordinarily found runnning on railroads and known as local freight.''

Now, the testimony in the record shows that the train is posted as a local passenger train instead of a local freight. While the two may be the same and may be intended for both passengers and freight, we insist that the term local freight only serves to confuse the court, and the testimony classes the train as a local passenger train. It is so posted. As we stated to the court, we cannot conceive of a train carrying both passengers and freight being any differently constructed and differently operated. It must have freight and passenger cars, and we insist that the most we can say of the train is that it carried both, and is therefore a mixed train, intended to carry both. Now under the statute the train need not carry passengers exclusively, if it carries passengers and freight then gross negligence need not be shown. For if it regularly carries passengers and freight, then it cannot be said that it carries passengers for accommodation any more than it carries freight for accommodation. The Perkins case outlines the distinction, and the facts in each case control.

Counsel insists that even if the train is a mixed train, that is; carrying passengers and freight, that under the rule in the Humphrey's case, we cannot recover because no gross negligence is shown. We insist that this is not correct, no gross negligence has been shown, and need not be shown, in fact, gross negligence has nothing to do with this case. The statute says that ''if a train is intended for both passengers and freight, that is, a mixed train, that there is no necessity of proving gross negligence. The fact that on certain kinds of trains, and under the peculiar circumstances of certain cases, parties are required to exercise more care than in other circumstances does not aid defendants in this case, for the reason that the negligence and the injury are not controverted in the second.

This train might have been made of hand cars, or coal cars with planks as seats, and if it carried passengers regularly and sold tickets to such passengers and so held out to the public, we insist that the circumstances would justify the court in at least leaving the matter for the jury's determination.

Now regarding section 4857 about posting bulletins. That statute does not destroy the probative value of the bulletins posted. The rules of the railroad companies require every train, in fact every car registered when it stops in a town or city. The fact is that the nature of the posting has more to do with showing the intent than the posting itself. It is not customary to post freight trains and passenger trains together on the same bulletin board under the head of "passenger trains" or designate the freight trains, or the local freight trains as "local passenger trains." The record of freight trains are not posted along with the bulletins of the passenger trains. Further the law requires the railroads to post the fact that the passenger trains are late, or "trains that carry passengers." Now if they carry passengers, they are intended to carry passengers, at least it might be inferred that they are intended for passengers, and the jury can determine that fact. As stated by Commissioner Whitfield from the bench, the statute does not define what and when a train can be said to be intended for passengers or passengers and freight, and must be inferred from the evidence. That is our case. It must be inferred from the circumstances of each case.

Referring to the question of Justice Smith from the bench regarding the effect of the judge of the lower court seeing the car and then determining from the thing itself, its nature. We do not think the statute allowing the court and jury to visit the scene of injuries, etc., deprives the jury of their right to pass on the facts as shown, and as stated, we respectfully contend that the

fact that the judge of the lower court actually saw the
car, and have no more weight than if the car had been
described to him accurately by witnesses.  The court has
no right to determine a fact when there is any reasona-
ble ground to determine otherwise, and we insist that
from the record alone there is sufficient ground to carry
the case to the jury regardless of what the court saw
when he visited the car in question with the jury.

Finally, we again insist that intention is a question of
fact, for the jury.  Counsel for defendant admitted in
argument before the court that the train (the third char-
acter of train), meant in the statute, was an excursion
train, we most respectfully insist, that this statute was
not passed for excursionists or joy riders, if the court
please, and that even if the train is mixed, no gross neg-
ligence need be proven or plead.

*Edward Mayes,* for appellee.

First.  As to the nature and constitution of the trains
to which the statute in question refers in its enactments.
The trains which are operated on the Illinois Central
Railroad, and on other railroads in the state, and those
which could possibly be run, are, and must be classified
as follows:

1.  Regular passenger trains, which carry no freight
but only passengers, with possibly express and mail.

2.  Mixed trains; by which I mean those trains which
carry freight, in freight cars and also carry at least one
passenger car; by which we mean a passenger car pure
and simple; one which is devoted only and exclusively to
the use of passengers, and is not and cannot be used, be-
cause of its make up, for any other company purpose.

3.  A freight train composed of ordinary freight cars
and at least one other car is not exclusively a passenger
car, but is a car used for company purposes, for the use
of the train hands and of the conductor, in the dispatch

of his train business, but in which passengers are allowed to ride, if they choose.

By this I mean the ordinary freight car, with the addition of a caboose or way car, whichever you may please to call it; and which train is ordinarily found running on railroads and known as the local freight.

4. Freight trains on which no passengers are allowed to ride, and from which they are rigidly excluded; these usually being, though not necessarily so, the through freights.

Our contention is that the train in this case is shown by the plaintiff's own evidence to have been of the third class, and, therefore, the peremptory instruction was properly given.

In the case of *Perkins* v. *Railroad Co.*, 60 Miss. 726, this whole question was threshed out. The nature of such a train was disputed between counsel, and was expressly decided by the court. We adopt the briefs of counsel. The court will see by reference to the opinion of Judge Campbell that the latter part of the section in question is merely a substitute for section 2 of the act of March 15, 1876, which employed the terms "mixed or accommodation trains," etc.

This decision was made at the April term, 1883, and since it was made this same statute has been re-enacted in two Codes with the interpretation placed upon it, and we insist that it should be adhered to.

One feature of the present appeal consists in the fact that certain bulletins were introduced in evidence, the objects being to show that because this train was put on the bulletin board, therefore, it was a train intended for the use of passengers, as well as of freight, within contemplation of the statute in controversy. It does not so show.

Section 4857, under which these bulletins are put up, provides that, "It is the duty of every railroad to keep conspicuously placed, as the commission shall direct,

and of the form and size prescribed by it, in each reception room or depot where a telegraph office is maintained, a bulletin board which shall show the time of arrival and departure or train.''

On mature consideration of this statute, we do not think that the bulletin board is required to show the time of arrival and departure of those trains which are freight trains exclusively so that from them passengers are excluded; but clearly this statute requires that the bulletin boards shall show the time of arrival and departure of all trains on which passengers are allowed to ride; and that, whether they are trains which within the sense of the statute in controversy are trains intended for the use of both passengers and freight, or whether they are not. We have reached this conclusion because of the fact that section 4857 is a penal statute, and has to be strictly construed, and because of the further fact that he statute only requires such a bulletin to be maintained at the depot where a telegraph office is maintained.

The true construction of this statute we submit, is, that the bulletin board is reuired to show the time of arrival and the departure of every train on which passengers are allowed to ride; not of those trains exclusively which the railroad company intends for both passengers and freight, or for passengers only. Therefore, the fact that the bulletin is kept up, sheds no light on this particular question. If the train were the precise train involved in the Perkins case cited above, the bulletin would still have to be made in order to meet the bulletin board statute.

FINALLY.

The court will observe that the declaration in this case does not allege any gross negligence; when the case was reversed and sent back for another trial, the declara-

tion still was not amended so as to charge gross negligence.

Furthermore, Mr. Alexander in his argument expressly stated that there was no gross negligence. The plaintiff's own proof shows that her injuries arose from the fact that just as she was about to step off from the train step to the landing, there came a jolt, and she fell.

Now even if this train had been mixed train, under the proof in the case, this peremptory instruction would have been right under the rule announced by this court in the *Humphrey's case,* 83 Miss. 721. In that case there was a mixed train, and the case shows what we mean by a mixed train as defined above. That was a train composed in part of freight cars and with two passenger cars. In that case there was a flying switch by which the train was so jolted that Mrs. Humphreys, who was standing in the aisle, was thrown down and injured. It was held that she could not recover because of her contributory negligence.

At the same time, the court there said expressly, that "The passenger who voluntarily takes passage on a mixed train must be deemed to assume all the inconvenience and risks usual and reasonably incident to transportation or travel upon such. Page 733.

We submit that a jolting of the nature and no severer than that which the plaintiff described in her testimony in this case, is one of the usual and ordinary risks of a mixed train.

Furthermore, the statute about the injuries suffered from the running of trains, has no application to this case, inasmuch as the plaintiff's testimony shows all of the facts and circumstances. *Railroad Company* v. *Humphreys, supra,* page 739.

Argued orally by *James Alexander* for appellant, and *Edward Mayes* for appellee.

*Anderson,* J., delivered the opinion of the court.

This case was here on appeal once before. On the former appeal it will be found reported under the style *Illinois Central Railroad Company* v. *White,* 52 South. 449. On that appeal the case was reversed and remanded, on the ground that no liability was shown on the part of the railroad company; the court holding that the jury should have been instructed to return a verdict in its favor. On the second trial, at the conclusion of the testimony, the court instructed the jury at the instance of appellee to return a verdict in its favor, which was done, and judgment entered accordingly, from which appellant prosecutes this appeal.

It is argued with great earnestness on behalf of appellant that the facts developed in this record are materially different from those shown on the first trial; that on the record here now it was a question for the jury whether the train on which appellant was injured was one "being intended for both passengers and freight," in the sense of the language used in section 4054, Code of 1906. After a most careful examination of the records on both appeals, we find there is no material difference in the facts as developed on the second trial from those shown on the first. The train on which appellant was injured was a regular local freight train, equipped with the ordinary appliances and conveniences of a local freight train, except that the car attached to it for the use of passengers was what is known as a "way car," with compartments for passengers, baggage, trainmen, and the tools and implements used in connection with the operation of a local freight train. It was neither a regular passenger train nor a "mixed or accommodation train." It is true that appellant in her testimony speaks of it as an "accommodation train;" but she also describes the character of the train, and her evidence, taken in connection with all the other evidence in the case, shows without material conflict that it was a local

freight train, and not an "accommodation or mixed train." It follows that there was no error in directing the jury to return a verdict in favor of the railroad company.

It is argued with great ability and show of reason on behalf of appellant (and it is contended in another case now in the consultation room involving this same question) that any freight train whatever which has attached to it a car for passengers to ride in, and on which passengers are invited to travel by the railroad company, is a freight train "intended for both passengers and freight." We are constrained to make an attempt to further elucidate the intent and purpose of the statute involved. The last clause of the statute (section 4054, Code of 1906) which is controlling in this case is in derogation of the common law. In determining the true interpretation of such a statute, it is a material aid to have in view the common law as it existed when the statute was enacted, in connection with the origin and history of the statute. According to the common law, the carrier owes the passenger the utmost degree of care for his safety, regardless of the character of the car or train on which he is being carried. There is no distinction in this respect between freight trains and regular passenger trains, provided such freight trains are used for the carriage of passengers.

At common law there is only one class of trains in the operation of which the carrier is relieved from the exercise of the utmost degree of care for the safety of persons traveling on such trains, and that is those trains which are not intended for and which do not carry passengers. Persons riding on such trains contrary to the rules of the carrier are trespassers, and even when riding by permission of the trainmen in charge of such trains are bare licensees. 33 Cyc. 763, 764. In case of injury to persons so carried, the carrier is not liable unless such injury is caused by its willful or intentional

wrong or gross negligence. 33 Cyc. 815. In this condition of the common law the legislature enacted chapter 155, p. 264, Laws of 1876, as follows:

"Whereas, certain railroad companies, doing business in this state, now refuse to carry passengers upon their freight trains, on account of the strict legal liability attaching to carriers of passengers; and whereas, such refusal on the part of said railroads to carry passengers upon their freight trains, results, generally, in great inconvenience, annoyance and loss to the citizens located upon the line of said roads: Therefore,

"Section 1. Be it enacted by the legislature of the state of Mississippi, that all railroad companies, running trains in this state, shall hereafter carry upon their freight trains all passengers who shall desire to ride thereon, and who shall conform to the rules of said railroads applying to passengers upon passenger trains in relation to purchase of tickets, and so forth, and such passengers upon freight trains shall be furnished with the best accommodations that said freight trains may have at that time that such passengers may apply for passage: Provided, that railroads shall not be required to furnish passengers upon freight trains any additional accommodations to those which freight trains ordinarily have.

"Sec. 2. Be it further enacted—That, in case of damage or injury to any passenger or passengers, upon any freight train, the railroad company shall not be liable therefor, except upon proof of fraud, malice, or gross negligence on the part of the company, its agents or employees: Provided, that the provisions of this section shall not apply to 'mixed' or 'accommodation' trains, so called, which are now run for the accommodation of both passengers and freight.

"Sec. 3. Be it further enacted—That any railroad company who shall refuse to carry upon any freight train, any person applying for passage thereon, who

shall conform to the rules of the railroad prescribed for passengers upon passenger trains, shall forfeit and pay to the person so refused the sum of fifty dollars, to be recovered by action before any court of competent jurisdiction.

"Sec. 4. Be it further enacted—That the provisions of this act shall not apply to through freight trains run by telegraphic order."

This statute was revised and brought forward into the Code of 1880, forming section 1054 of that Code, which appears in the same language in section 3557 of the Code of 1892, and section 4054, Code of 1906, which is as follows: "Every railroad company shall be liable for all damages which may be sustained by any person in consequence of the neglect or mismanagement of any of its agents, engineers, or clerks, or for the mismanagement of its engines; but for injury to any passenger upon any freight train not being intended for both passengers and freight, the company shall not be liable except for the gross negligence or carelessness of its servants." In *Perkins* v. *Railroad Co.,* 60 Miss. 726, Judge Campbell, who prepared the original draft of the Code of 1880, speaking for the court, said: "The train on which the appellant was a passenger was a 'freight train,' not being intended for both passengers and freight, within the meaning of section 1054 of the Code of 1880, and the action of the circuit court upon the instructions was correct. The latter part of that section is a substitute for section 2 of the act of March 15, 1876 (acts 1876, p. 265), which employed the terms 'mixed' or 'accommodation' trains 'run for the accommodation of both passengers and freight.' A train which is strictly a freight train, with only the appliances of such a train, on which persons are not sought to be induced to take passage by the offer of other accommodations than are afforded by freight trains, cannot be said to be intended for both passengers and freight, although all

persons may become passengers by going into the con-
ductor's caboose.   They who take passage on such a
train cannot expect, and have no right to demand, the
conveniences and attention required with respect to pas-
senger trains or those intended by the carrier for both
freight and passengers.''

It will be noted that the court says in that case that
the latter part of section 1054, Code of 1880, is a substi-
tute for section 2 of the act of 1876, *supra.*   In the case
of *Illinois Central Railroad Co.* v. *Trail,* 25 South. 863,
the court speaks of the train on which the injury oc-
curred as a through freight train.   We have examined
the record in that case, and find that it was a freight
train which did not stop at all stations; but the appellee,
Trail, testified that it carried passengers, tickets were
sold for it, and he paid the conductor on this occasion
because he had not time to purchase a ticket, and that it
had attached to it a regular passenger caboose.   The
court held that the railroad was only liable for gross
negligence because the train in question was not ''de-
signed to carry passengers.''   We understand the court
to hold, in *Perkins* v. *Railroad, supra,* that the proviso
to section 2 of the act of 1876 means the same thing as
the latter part of section 1054, Code of 1880 (section
3557, Code 1892, and section 4054, Code 1906).   The evi-
dent purpose of the legislature in the adoption of this
statute was to relieve railroad companies from the ex-
ercise of the highest degree of care as to passengers on
all freight trains whatsoevr, except ''mixed or accommo-
dation trains,'' which were left as at common law.

Since the construction put on this statute in *Perkins*
v. *Railroad Company, supra,* it has been twice re-enacted
in the same language in the Codes of 1892 and 1906.   The
rule is that where a statute has been construed by the
highest court of a state, and afterwards re-enacted in
substantially the same terms, the legislature by such re-

enactment adopts, along with the statute, such construc-
tion.

What is intended by the language "intended for both
passengers and freight," or "mixed or accommodation
trains," which are synonymous in meaning? The court
knows what a "mixed or accommodation train" is, for
everybody knows. It is a matter of common knowledge,
of which the court takes judicial notice.

In section 2 of the act of 1876, *supra,* the words
"mixed" or "accommodation" are put in quotations,
and are referred to as "so-called" showing that it was
a matter of general understanding at that time what
class of trains was intended to be covered by the proviso
to that section. A "mixed or accommodation train" is
a train equipped and having the appliances and facili-
ties suited for the carriage of passengers as well as
freight. Its purpose and business is as much the one
as the other. In its arrangements, the safety of passen-
gers is as much looked to as the carriage of freight.
It usually has two or more coaches for passengers, and
separate compartments or coaches for the races, and a
baggage compartment or car, etc., and runs on a regular
schedule, and subordinates its freight business to the
passenger business to the extent necessary to make con-
nections with other passenger trains on its own line and
those on connecting roads, and it stops opposite stations
for the convenient ingress and egress of passengers.

On the other hand a freight train, not intended for
both passengers and freight, or which is not a "mixed
or accommodation train," in the meaning of this statute,
is a regular freight train on which passengers are in-
vited to travel, having for their convenience a caboose,
way car, or passenger coach attached, but has none of
the other equipment or appliances of a regular passen-
ger train, beyond what all freight trains have, and in
making its schedule does not make connection with other
trains on its line or those of connecting carriers, if pre-

vented by the proper handling of its freight business; in other words, a train on which a passenger business is subordinated to that of the carriage of freight— a train the paramount object of which is the carriage of freight, and not of passengers.

It might be in some cases a question of fact for the jury whether a given train is one intnded for both passengers and freight in the meaning of this statute. But where the evidence shows without conflict, as it does in this case, that the train in question was not a "mixed or accommodation train," but a regular local freight train, carrying passengers as a mere incident, there is no question for the jury.  *Affirmed.*