[Civil No. 2116.   Filed January 27, 1926.]

[242 Pac. 870.]

## ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. STATE, Appellee.

1. RAILROADS — LEGISLATURE PRESUMED TO HAVE ADOPTED POPULAR SIGNIFICANCE OF WORDS NOT DEFINED IN FULL CREW LAW.—Legislature not having defined classes of trains mentioned in "Full Crew Law" (Civ. Code 1913, pars. 2171–2179), Supreme Court should assume that legislature adopted popular significance of words used.

2. RAILROADS—"PASSENGER TRAIN" AND "FREIGHT TRAIN" DEFINED.— "Passenger train" is one which carries passengers, their baggage, mail and express only, while a "freight train" is one which carries freight alone, having a caboose attached for use of crew.

3. RAILROADS—"LOCAL FREIGHT TRAIN" AND "THROUGH TRAIN" DEFINED.—A "local freight train" is one which stops at any siding where there is freight to load and unload, as differentiated from one which takes and leaves freight only at certain stops, and generally called a "through train."

4. RAILROADS—TRAIN CARRYING PASSENGERS, MAIL, EXPRESS, AND FREIGHT HELD "MIXED TRAIN," WITHIN CATEGORY OF "OTHER TRAINS."—Train carrying combination baggage, mail, express and passenger-car, and from one to fifteen freight-cars, but no caboose, making certain regular stops for passengers, mail and express, and stopping for freight waiting at any station, *held* a "mixed train," which is within category of "all trains other than those described in the preceding portions of this act" (Civ. Code 1913, par. 2177), and hence not within requirements of paragraph 2176 as to number of crew.

See (1–3) 27 C. J., p. 905, n. 55; 38 C. J., p. 130, n. 58; 30 Cyc., p. 800, n. 26; 36 Cyc., p. 1114, n. 96.   (4) 33 Cyc., p. 664, n. 63 New.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   R. C. Stanford, Judge. Judgment reversed and cause remanded, with instructions.

Messrs. Baker & Whitney, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Earl Anderson and Mr. F. J. Duffy, Assistant Attorneys General, and Mr. A. R. Lynch, for the State.

LOCKWOOD, J.—This is an action by the state of Arizona against the Arizona Eastern Railroad Company, a corporation, hereinafter called defendant, based on an alleged violation of what is commonly called the "Full Crew Law," which is found in paragraphs 2171–2179, inclusive, Civil Code, Revised Statutes of Arizona of 1913. The case was presented to the trial court on an agreed statement of facts, and judgment was rendered against defendant, and a fine of $100 imposed. An appeal was taken to this court in August, 1922, but by stipulation of the parties the time for filing briefs was extended for some three years; the case not being submitted to us until November, 1925.

The question is wholly one of law, and involves the construction of paragraphs 2176 and 2177, which we quote in full.

"2176. All local freight trains, doing any switching, or unloading any freight of whatever nature, shall be equipped with, and shall carry, a crew consisting of six persons, to wit: One conductor, one engineer, one fireman, two brakemen, and one flagman.

"2177. All trains other than those described in the preceding portions of this act, when operated outside of the yard limits, shall be equipped with, and shall carry, a crew consisting of not less than one engineer, one fireman, one conductor, one flagman, and one brakeman."

It is the contention of the state that the train on whose operation the action is based was a "local freight train" within the meaning of paragraph 2176. Defendant insists, however, it was a "mixed train," and therefore governed by the language of paragraph

2177. It is agreed that if it was a "local freight train" the judgment of the trial court was correct, but if it was not the case must be reversed. The stipulation of facts reads as follows:

"On the line of the Arizona Eastern Railroad Company between Phoenix and Hassayampa, train No. 30 runs Tuesday, Thursday, and Saturday of each week. It is composed of a locomotive, tender, and from one to 15 freight cars, one or two being loaded, and the balance empties to bring back loads from Hassayampa and intermediate points. This train when it goes down is No. 30 and when it comes back it is No. 29, and returns with from 1 to 15 loads. Trains No. 30 and No. 29, being the same train, carry a combination baggage, mail, express, and passenger car. This car carries United States mail, express, passengers, and the baggage of the passengers. Neither train No. 30 nor train No. 29 carries any caboose.

"The regular stops between Phoenix and Hassayampa, including the Litchfield branch, are Tolleson, Cashion, Avondale, Litchfield, Liberty, Buckeye, and Palo Verde. At these regular stops trains Nos. 29 and 30 stop on each run to take United States mail. Stops are made at the above-mentioned stations for the purpose of letting off and taking on passengers, delivering and receiving United States mail, delivering and receiving express, whether there is any freight consigned to or from said stations or not. In addition to the regular stop stations there are the following flag stations: Campo, Fowler, Gean, Norton, Conger, and Barn. Trains 29 and 30 stop at said flag stations only when there is express, United States mail, passengers, or freight to be delivered or received from said stations. Said last-mentioned stations are designated as flag stations and trains 29 and 30 stop at said stations when necessity requires to deliver or receive passengers, express and mail, irrespective of whether there is any freight delivered or received at said stations. All of the above-mentioned regular stops and flag stations are carried upon the time card of the railroad. The time card

of the railroad is hereto annexed, marked Exhibit 'A,' and is the time card which was in force and effect on or about the 4th day of April, 1922. On the 4th day of April, 1922, and at the time of the alleged violation of the statute referred to in plaintiff's complaint, said trains 29 and 30 were being operated with the following crews: One engineer, one fireman, one conductor, and two brakemen, one of which brakemen acts in the capacity of flagman if a flagman is required.

"Said trains 29 and 30 deliver local freight to either regular stops of flag stations between Phoenix and Hassayampa whenever freight is carried on said train consigned to any such regular stop stations or flag stations. Said trains 29 and 30 also stop at any of the regular stop stations or flag stations between Phoenix and Hassayampa whenever there is any freight to be received at any time at said stations. Said trains 29 and 30 are carried upon the time card and schedule of the defendant company as mixed trains.

"[Signed]   G. P. BULLARD,
"Attorney for Defendant.
"R. E. L. SHEPHERD,
"County Attorney.

"Filed June 5, 1922."

The legislature unfortunately did not define any of the classes of trains mentioned in the statute, and we have been unable to find any case defining these terms under an act similar to ours. In such circumstances we should assume the legislature has adopted the popular significance of the words, on the theory that they are too well known to require definition. Now in ordinary parlance a "passenger train" is one which carries passengers, their baggage, mail and express only, while a "freight train" is one which carries freight alone, having a caboose attached for the use of the crew. A "local freight train" is one which stops at any siding along the line where there is freight to load and unload, be the quantity what it

29 Ariz.—29

may, as differentiated from one which takes and leaves freight only at certain definite stops and generally called a "through train." Passenger trains are similarly subdivided.

If all trains were devoted either exclusively to passenger or to freight service, our task would be simple, but it is frequently true, and particularly in the sparsely settled western country, that a branch or stub line may not have enough either of freight or passenger business to justify a separate train of each character, and it is therefore a common and well-known practice for trains to be run combining the duties of both freight and passenger service. These are known in railroad language as "mixed trains." They partake of the nature of passenger trains, in that they have regular accommodations for passengers, baggage, express and generally mail, arrive, make stops, depart on regular scheduled time at named stations, whether or not business awaits there, and are advertised to the world on the time-cards of the railroad as doing these things. On the other hand they are like local freight trains in that if any freight offers they carry it on the regular conditions imposed by freight trains, and do local switching of such freight cars as may be required by the service. *White* v. *Illinois Cent. R. Co.,* 97 Miss. 91, 55 South. 595; *Southern Ry. Co.* v. *Cunningham,* 123 Ga. 90, 50 S. E. 979; *State* v. *Missouri Pac. Ry. Co.,* 219 Mo. 156, 117 S. W. 1173.

If our legislature had provided rules for only two classes of trains, freight and passenger, it might well be said that all trains must in some manner be placed in one category or the other; the choice being dictated by which class the particular train in question most nearly resembled. But in paragraph 2177 the law-making body recognized that there were other trains in railroad service than those which could be

classified as either freight or passenger, and pro-
vided a rule governing trains which were not prop-
erly placed under either of the two main heads; and
one class at least of trains, neither freight nor pas-
senger, is the mixed train.

Does the train in question come within this last-
named classification? An examination of the stipula-
tion on record and quoted above shows that it pos-
sessed every characteristic of the "mixed train"
above described. It carried passengers, baggage, ex-
press and mail, but did not have a caboose. It had
seven regular stations between the termini of the line
at which stops were made for the purpose of con-
ducting passenger and mail business, whether there
was any freight to be received or put off or not. All
these stations were carried upon the regular time-
card of the railroad, and the train was designated on
the time-card and scheduled as a "mixed train." In
addition thereto, the train carried from one to fifteen
freight-cars, and stopped for the purpose of receiving
or delivering local freight whenever any was waiting
at any of the stations along the line.

It seems to us that, if such a thing exists as a
"mixed train," the one in question comes clearly
within the description, and that it should no more
be called either a passenger or freight train than we
should give the name of either horse or ass to the
mule, which partakes of the character of both.

Since admittedly the train in question carried the
crew provided for in paragraph 2177, and a "mixed
train" in our opinion comes within the category of
"all trains other than those described in the preced-
ing portions of this act," the judgment of the trial
court is reversed and the cause remanded, with in-
structions to enter judgment for defendant.

McALISTER, C. J., and ROSS, J., concur.