THOMAS G. COLLINS *v.* SOUTHERN RAILWAY COMPANY.

[42 South. Rep., 167.]

RAILROADS.   *Boarding train. - Negligence.*

> In the absence of a .showing that he was seen by an employe of
> defendant, a plaintiff is not entitled to recover of a railroad com-
> pany for injuries suffered from the sudden jerking of a train on
> which he sought to take passage, where he seized the handhold
> of one of the coaches before the train stopped, but as it ap-
> proached a crossing where it generally stopped, although it was
> the custom of the company to slow down its trains before reach-
> ing the crossing, and persons becoming passengers there were ac-
> customed to grasp the handhold and walk along with the train
> until it stopped before boarding it.

FROM the circuit court of Washington county.

HON. A. McC. KIMBROUGH, Judge.

Collins, the appellant, was plaintiff and the railroad com-
pany, the appellee, defendant in the court below.

The suit was for damages for personal injuries sustained
while attempting to board one of the trains of the defendant,
the Southern Railway Company, and from a judgment sustain-
ing defendant's demurrer to his declaration and dismissing the
suit, he appealed to the supreme court.

The declaration alleged that under the ordinances of the city
of Greenville, where the accident occurred, all steam and electric
railways are required to bring their cars to a full stop at all
crossings; that the crossing at which the accident occurred was
within the city limits, and that it had been the custom of the
Southern Railway Company to slow down before reaching this
crossing, and sometimes to come to a full stop, and sometimes to
run very slowly without coming to a full stop; and that, if the
train did come to a full stop, it was only for a moment.   It
alleged that it had been the constant practice and custom of per-
sons, intending to take passage on the train of the defendant com-

pany, to board the train at this crossing when it stopped or slowed down; that the defendant company had, "without objection, permitted, allowed, encouraged, and invited any intending passengers to board the train at said crossing, and to alight therefrom." It alleged that persons intending to board the train "usually grasp the handrail on the passenger coach, and walk along with the train while in slow motion, and board the car at the moment of stopping, or take the handrail at the moment of stopping and board the train as it starts off; . . . that the stopping of the train is so brief that it does not permit intending passengers to wait until the train stops and then board it before it is again in motion." The declaration further alleged that on the morning of the accident the plaintiff went to the crossing, intending to take passage on the defendant's train; that the train slowed down to about two miles an hour, and that appellant caught the handrail of the coach, intending to board the same, while holding the handrail and walking along with the train, intending at the moment of its stopping to ascend the steps of the coach and thus board the train; that while holding the handrail the train was suddenly and without warning jerked forward, and plaintiff thrown to the ground, receiving the injuries of which he complains. It alleged that the plaintiff acted carefully and prudently, and could have boarded the train had it not been for the sudden and unlooked-for jerk, which wrenched his hands from the handrail. It alleged willful, malicious and grossly negligent conduct on the part of the engineer in charge of the train, but did not allege that when this jerking complained of happened the engineer in charge of the train or any other operative of the train knew that the plaintiff was walking by the train holding the handrail, or preparing to board the train.

*A. J. Rose,* for appellant.

The statement in the declaration as to the stopping or slowing of the train at the crossing required by the city ordinances, is merely preliminary, though necessary, to the statement of the

cause of action, and that statement is: (1) "The daily constant practice and custom of persons intending to take passage on said railway . . . to board said train at said crossing." (2) That this custom and practice of boarding and alighting from said train has been "permitted by defendant, which has, without objection, permitted, allowed, encouraged, and invited intending passengers to board said train at said crossing and to alight therefrom." (3) That the defendant accepts and receives all persons at said crossing as passengers. (4) The care of plaintiff in his conduct, and that the sudden jerking of the train was "willful, malicious, and grossly negligent."

Various definitions are given in the decisions and reports and in all of them good faith on the part of the intending passenger coupled with placing himself, at a proper time, and in a proper place, in a position to take passage, with the express or implied consent of the railroad, appear to be the requisites, and the only ones, to create the relation of carrier and passenger. Baldwin's American Railroad Law, p. 300, ch. 32; 5 Am. & Eng. Ency. Law (2d ed.), 491, and notes; 6 Cyc., 536; *Chicago & E. I. R. Co.* v. *Johnson* (111), 54 L. R. A., 830, quoting and approving the text in 5 Am. & Eng. Ency. Law (2d ed.), 488; *Phillips* v. *Southern Ry. Co.,* 124 N. C., 123; 45 L. R. A., 164; *Western, etc., R. R. Co.* v. *Voils* (Ga.), 35 L. R. A., 655: Notes to *Webster* v. *Fitchburg R. Co.* (Mass.), 24 L. R. A., 521.

We have undertaken to show by these authorities that it was not necessary for the plaintiff in this case to have purchased a ticket, or to have actually got aboard the train in order to become a passenger, provided he presented himself for passage in a proper condition, in proper manner, at a proper place to be carried. That he presented himself in a proper condition is not questioned. Does the declaration show a presentation in a proper place?

The declaration alleges the place to have been one where the law required trains to stop, but this failure to stop is not the

gravamen of the action.    Plaintiff does not allege he placed him-
self at the crossing because the law required trains to stop there.
He states the train did not stop in obedience to the law, or merely
slow down, in disobedience to law, but in either event enabling
passengers to get on in safety, and then the allegation is, first,
"the daily constant practice and custom" of persons to take pass-
age at the crossing, and second, "that this practice and custom
.   .   .   has been permitted, allowed, encouraged, and invited
any intending passengers to board said train at said crossing and
to alight therefrom.

Having presented himself at a place where it was the daily
constant practice and custom to board the train, and also, this
place being one where the defendant "permitted, allowed, encour-
aged, and invited any intending passengers to board said train,"
we submit that the declaration shows plaintiff was a passenger
under all the well-recognized rules and definitions of the de-
cisions and text writers.

The learned judge below was largely influenced by the case of
*Creech* v. *Charleston & N. W. Ry. Co.* (S. C.), 45 S. E. Rep.,
86; 31 Am. & Eng. Ency. Law (2d ed.), 903.    In that case the
action was for injuries in attempting to board a train, the decla-
ration alleging failure to bring it to a full stop at a railroad
crossing, the sudden increase of speed just before reaching the
crossing, and that the regulation of the company required it to
stop at the crossing.    The declaration in that case alleged that
the company was accustomed to receive and carry passengers who
might board the train at the crossing, but did not allege any cus-
tom of the company to stop at the crossing for the purpose of
receiving passengers "so as to warrant plaintiff in believing that
he would be allowed to board the train as a passenger at that
point."    "There was no allegation of any custom of defendant
to receive as passengers at that point those who might board its
moving trains."    The supreme court in that case sustained a

demurrer to the declaration and expressly placed its decision on the ground that while there was an allegation that the defendant company "was accustomed to receive and carry passengers" who might board the train at the crossing, yet there was no allegation that the company stopped at the crossing for the purpose of receiving passengers "so as to warrant the plaintiff in believing that he would be allowed to board the train as a passenger at that point."

The opinion clearly shows that if the declaration had contained an allegation of such custom to stop "for the purpose of receiving passengers so as to warrant plaintiff in believing that he would be allowed to board the train as a passenger at that point," it would have been good as against the demurrer. This is made clear by the reasoning of the court, for the opinion shows that in the trial court the circuit judge construed the declaration to mean that the defendant's train was accustomed to stop at the crossing to receive passengers, and for this reason overruled the demurrer. The supreme court reversed this ruling and held that the declaration did not so allege such custom, and on this ground, and this alone, sustained the demurrer.

In the *Creech case* there was no allegation of a custom to stop at the crossing for the purpose of receiving passengers "so as to warrant the plaintiff in believing that he would be allowed to board the train as a passenger at that point." The present declaration alleges more than a custom; it alleges an invitation. The only effect of a custom would be to create an implied invitation, and here we have the allegation of the invitation itself. Under the rule announced in the *Creech case* something must be done by the railroad to warrant an intending passenger in believing he would be allowed to board a train at a place other than a regular depot or passenger station, otherwise there would be no breach of duty to him, but an allegation that the company invited intending passengers to board a train at a particular point is sufficient, for this is all that is done by the railroad toward the public in reference to its regular passenger depots and stations.

By its advertisements and publication of its schedule, passengers are invited to enter its trains at its designated stations, and he who presents himself there, in proper condition, and at a proper time, for passage, becomes a passenger; the relation of carrier and passenger is thus created.

Now, the railroad company, so far as the passenger is concerned, has the right to extend this invitation so as to warrant one in believing that he will be accepted as a passenger at a place other than its regularly scheduled passenger depots.   And if the invitation is extended to intending passengers to board the train at a crossing where the law requires a stop, so as to warrant the belief that the train will be stopped then we say that liability cannot be evaded by asserting that the stopping place was not one required by law, and failure to stop constituted no breach for which the passenger can complain.   If we had alleged such a custom to stop and take on passengers at a crossing as would warrant one in believing that he would be received as a passenger at the crossing, the gist of it would be that the company, by its conduct and custom, had created in the mind of the intending passenger a belief on which he had the right to rely. An allegation of the invitation itself creates the same warrant for belief. Custom in such case merely implies the invitation.

But the doctrine of the *Creech case* is opposed to that of *Dewire* v. *Boston & Maine R. R.* (Mass.), reported in 2 L. R. A., 166.   In this case the plaintiff boarded the train, not at a regular passenger station of the defendant, but at a point five hundred feet from where the defendant's road crossed that of another road, where defendant was obliged by law to stop its trains.   The injury happened after plaintiff had reached in safety the inside of a passenger car.   The defense was that plaintiff had no right to take the train at this crossing, and was therefore not a passenger when he was injured, but the court held he "was not a passenger in taking the train, and when he had reached in safety the inside of a passenger car, then certainly, if not before, he became

a passenger." This case indicates that the relation was established when he boarded the car, for if the crossing was a place at which he could not lawfully enter, then the relation of carrier and passenger was not created and his safe entry into the car would have related back to the time of boarding. In other words, if he was not a passenger when he first boarded the car at the crossing, he did not become one when he had reached in safety the inside of the car. The relation must have been created at the time he sought entry as a passenger. This view is upheld by the doctrine of *Railroad Co.* v. *Robinson*, 68 Miss., 643 (s.c., 10 South. Rep., 60), where the plaintiff unlawfully flagged a train on a dark and rainy night at a point on the road at which the servants of the company had no reason to expect a passenger. The plaintiff paid his fare after he reached the inside of the coach, but that fact "throws no light upon the past occurrence from which the injury resulted. *Ibid.*

So, if the doctrine of *Railroad* v. *Robinson* is a correct view of the law, then it is clear that the decision in *Dewire* v. *Boston, etc., R. Co.*, is that though no invitation be held out to take passengers at a crossing where the train is obliged by law to stop, yet if the railroad permitted passengers to take trains at such point, then it is a question for the jury to determine whether or not the plaintiff, in taking the train, intended to become a passenger.

In this case of Dewire, liability was placed on the ground that "defendant permitted passengers to take trains at this place (the crossing), and that plaintiff, in taking the train, intended to become a passenger.

The general rule that to board a moving train is negligence, which will bar an action for resulting damages, is wise, but it has its exceptions. And when it is a passenger who attempts to get on a slowly moving train, the instances are rare when the court should take the case from the jury. *Wooten* v. *Railroad Co.*, 79 Miss., 26 (s.c., 29 South Rep., 61); Baldwin's Am.

R. R. Law, 313; *Carr* v. *Ecl. R. R. & E. R. Co.* (Cal), 21 L. R. A., 365; *Alabama Midand R. Co.* v. *Horn* (Ala.), 31 South. Rep., 481; *Toler* v. *Y. & M. V. R. R. Co.,* 31 South. Rep., 788; *Kelly* v. *Vicksburg, etc., R. Co.* (La.), 388.

The declaration alleges two methods open to a passenger to board the train at the crossing, and only two, but whichever method was adopted the passenger could only board the train while in motion. It is alleged that he could board the train by grasping the rails, walking with the train, and board it at the moment of stopping; or, he could wait until the train came to a stop, then take the rail, and board it as it moved off. The allegation is that the stop was so brief that the passenger could not board and enter the train while it was at a standstill, but whether he pursued the one or the other of the two methods of entering, he must board the train while moving.

In view of the allegations of the declaration as to how the train must be boarded, and that it could not be boarded at the crossing except when it was in motion, the passenger who is invited there, and no other way presented to him, is not guilty of contributory negligence in accepting the invitation and seeking to board the train when moving, if it cannot be boarded in any other way, and the way so presented is not obviously a dangerous one to an ordinary, prudent, and careful man. But whether or not such attempt was one that a prudent and careful man would make is a question for the jury. *Mississippi, etc., R. R. Co.* v. *Mason,* 51 Miss., 234; *Central, etc., R. R. Co.* v. *Miles* (Ala.), South. Rep., 696; *Mils* v. *Missouri, etc., R. Co.,* 55 L. R. A., 497–503; *Railway Co.* v. *Clay,* 19 South. Rep., 309; *Watkins* v. *Birmingham, etc., Co.,* 24 South. Rep., 394; *Louisville, etc., R. R. Co.* v. *Thompson,* 64 Miss., 594; *Vicksburg, etc., R. R. Co.* v. *McGowan,* 62 Miss., 694 (s.c., 1 South. Rep., 840); *Hopson* v. *Kansas City, etc., R. R. Co.,* 87 Miss., 789 (s.c., 40 South. Rep., 873).

It was urged below that the plaintiff was negligent and that

his own negligence was the proximate cause of the injury, the argument being that he was injured in attempting to board a moving train, and that this, and not the sudden jerking of the train, caused the injury, or was the proximate cause of it. We think that this contention is disposed of by the declaration itself and by many of the authorities heretofore cited, but it was insisted on with earnestness by counsel below.

The declaration alleges: "That plaintiff, in presenting himself for passage at said crossing, and in taking hold of said handrail, acted carefully and circumspectly, and as a prudent, careful man, and could have safely boarded said train, even though it had not come to a full stop, had it not been for the sudden, unlooked-for, and violent jerking forward of said train of cars, which wrenched his hands from their hold and threw him to the ground."

This is a statement of fact, not a mere conclusion, and is admitted to be true by the demurrer. It shows that the injury was not caused by any negligence of plaintiff, but by an act of the defendant alleged to be willful, malicious, and grossly negligent.

To prevent a recovery, plaintiff's negligence must proximately contribute to the injury. If the sole immediate cause of the injury was defendant's negligence, the plaintiff can recover, notwithstanding previous negligence of his own. *Miss. Cent. R. R. Co.* v. *Mason,* 51 Miss., 244; *Illinois, etc., R. R. Co.* v. *Bethea,* 88 Miss., 119 (s.c., 40 South. Rep., 813); *Montgomery, etc., R. R. Co.* v. *Stewart* (Ala.), 8 South Rep., 710.

*Catchings & Catchings,* for appellees.

This case is not to be determined by the rules defining under what circumstances it will be negligence to attempt to board a moving train.

By appellant's own statement the time had not arrived when

he was to board the train, either while it was standing or while it was moving. The train was not come to a stop.

The custom which he describes, and with which he alleges the railway company was familiar, did not contemplate a boarding of the train until after it had come to a stop. The custom, according to appellant's description of it, was that persons should only board the cars after they had come to the momentary stop described. It is true the declaration alleges that the stop at the crossing is too brief to permit passengers to wait until the train stops and then to board it before it is again in motion. But the custom was that the effort to board the train should not begin until the train had stopped. There is no allegation that the company invited those intending to board trains at this crossing to grasp the handrail while the train was in motion, and to walk along with it until it came to the momentary stop.

According to the appellant's own showing he might have boarded the train just as well by walking along by the side of it until it came to a stop without grasping the handrail.

It does not appear from any allegation that it was at all essential that one intending to board the train should seize the handrail and walk along with the train until it stopped. To do that necessarily involved more or less danger.

This court will take judicial notice of the fact that in stopping and starting trains there is always and necessarily more or less jerking of the coaches. This jerking seemed to have been a little more than usual in this particular case, and thereby appellant was thrown down and injured.

If he had not seized the handrail while the train was in motion he could have kept pace with it just as well, and could have boarded the train by grasping the handrail after it had come to a stop. He deliberately assumed the risk of injury from the jerking of the train by unnecessarily grasping the handrail while the train was in motion.

It seems to us that there could be no clearer case of contributory negligence. If the train had come to a stop and the appellant had endeavored to board it as it was moving off, then the question as to whether in doing so he was guilty of contributory negligence would doubtless · have been one which should have been submitted to a jury, provided the relation of passenger had commenced. *Wooten* v. *Mobile, etc., R. R. Co.,* 79 Miss., 26 (s.o., 29 South. Rep., 61); *A. & V. R'y. Co.* v. *Jones,* 86 Miss., 263 (s.o., 38 South. Rep., 545).

The doctrine discussed in these cases, however, as already pointed out, does not apply here, for the reason that the appellant was not attempting to board a moving train. Even if the custom described by the appellant in his declaration existed as fully as described, he is not thereby helped. The custom, as he describes it, does not put the railway company in the attitude of inviting and encouraging persons who take its trains at this crossing to seize the handrails of its coaches and walk along by them before the trains come to a stop. Certainly the appellant did not occupy the relation of a passenger when he was injured.

We invite the attention of the court to the case of *Webster* v. *Fitchburg Railroad Co.,* 37 N. E., 165, decided by the supreme court of Massachusetts.

It cannot be possible that the law will imply an acceptance by the railway company of the appellant as a passenger before its train had stopped and while he was holding on to the handrail of one of its moving coaches, and so in a position of danger to himself, as was shown by the result in this identical case. He had not yet presented himself at a proper place and in a proper manner. *Scheper* v. *Union, etc. R. R. Co.,* 29 S. W., 713.

That one does not become a passenger until he had put himself in charge of the carrier and been received by him as such, either expressly or impliedly, was also declared by the supreme

court of Illinois in the case of *Illinois, etc., R. R. Co.* v. *O'Keefe,* 48 N. E., 294. To the same effect is the case of *Bricker* v. *Caldwell,* 18 Atl., 983.

There are cases, of course, in which the relation of passenger begins before any attempt is made to enter a train. In such cases the law from the particular circumstances implies that a person has offered to become a passenger, and that his offer has been accepted by the company, and in that way that the contract which must exist in order to constitute a passenger has been impliedly entered into. *L. N. A. & C. Railroad Co.* v. *Treadway* (Ind.), 40 N. E., 807.

In *Smith* v. *St. Paul, etc., R. R. Co.,* 18 N. W., 827, the supreme court of Minnesota held that where one intended to board a street car had hailed the car, and it had stopped to enable him to take passage, and he was in the act of carefully and prudently attempting to step on the platform, he was to be regarded as a passenger. This ruling was unquestionably correct, inasmuch as all the circumstances indicated that the street railway company had accepted the person attempting to enter it as a passenger.

In the case of *Rogers* v. *Kennebec Steamboat Co.,* 29 Atl., 1069, it was held that the plaintiff in that case, who was attempting to get on a steamboat by passing over a gang plank which had been laid by the officers of the steamboat to enable passengers to enter it, and who was injured by the dropping of the plank, had become a passenger. The court said that at the moment of the injury the plaintiff was within the protection of the servants of the steamboat company. There can be no question that the ruling in this case by the supreme court of Maine was correct. See, also, the case of *Brien* v. *Burnett,* 8 Car. & P., 724, which is one of the earliest cases to the same effect.

None of these cases, however, is similar to the one before this court here, for the train had not stopped, and the appellant

was injured because he was doing something which was necessarily accompanied by more or less danger, and which, according to his own allegation, was not necessary to be done by him to enable him to board the train.

By his own allegations he might as well have walked along by the moving train without seizing the handrail until it stopped, and then have boarded the train by the assistance of the handrail.

It was certainly unnecessary that he should have grasped the handrail and held on to it while the train was in motion.    The rule is universal that where trains stop for the purpose of taking on passengers, or for the purpose of letting passengers off, reasonable facilities and suitable opportunity must be furnished for that purpose.

The momentary stop made by the company's trains at this crossing was not a compliance with this universal requirement. The company made no such provision, for the reason that this crossing was not a place provided by it at which to receive passengers or to discharge them.    The declaration does not so claim.    On the contrary, it alleges that the momentary stop made by the company's trains at this crossing was made solely for the purpose of complying with the ordinances of the city of Greenville.    Hence there is no claim that he was injured because the company did not give him a reasonable opportunity to board the train, and there is no claim that he was injured because the company did not stop its train on this occasion at all.

It is very evident from the allegations of the declaration that the company did not intend that persons should get on its trains or off of them at this crossing, and that all that it did was to carry as passengers such persons as might succeed in getting on its trains at this place.

Inasmuch as all of the facts are fully set out it is evident that the allegations of the declaration that the company invited

and encouraged persons to get on its trains at this crossing state merely a conclusion of law, attempted to be deduced from the naked fact that the company carried as passengers those who, availing themselves of this momentary stop, were in the habit of boarding the trains.

CALHOON, J., delivered the opinion of the court.

The place of the accident was in no sense a depot or flag station. If, notwithstanding that, the appellant had been seen by the engineer holding to the handrail of the moving train, although he had caught hold of it while it was moving, we would have a different case to decide. But there is no averment in the declaration that he was so seen by any operative of the train.

*Affirmed.*