DANTZLER SHIPBUILDING & DRY DOCKS CO. *v.* HURLEY ET AL.

[81 South. 163, In Banc.]

1. CARRIERS. *Carriage of passengers by automobile truck. Breach of contract.*

An employer who conveyed his employees to and from their homes in an automobile truck for a small stipend, did not breach his contract of carriage by stopping his truck a few yards beyond his employee's gates instead of directly opposite, where no impediments or inconvenience were in the way of his getting into his home from where the truck was stopped.

2. SAME.

In such case the employer was not liable for the death of an employee, who jumped from the moving truck when the truck driver failed to stop his truck directly opposite the employee's gate. In such case the efficient and proximate cause of the injury causing death was the voluntary act of the employee in jumping from the truck and not the negligence of the driver.

3. SAME.

In such case the fact that the driver of the truck stopped a few yards beyond the employee's gate was not negligent, although his custom was to stop in front of the gate.

APPEAL from the circuit court of Jackson county.

HON. J. H. NEVILLE, Judge.

Suit by Mrs. J. W. Hurley and others against the Dantzler Shipbuilding & Dry Docks Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*White & Ford,* for appellant.

It will be noted at the outset that liability against appellant in this case was predicated on the relation of carrier and passenger which it was alleged existed between appellant and deceased Hurley. The declaration did aver that Hurley was employed by appellant, and the relation of master and servant existed between them on the date when deceased was killed, but it was charged that at the time he was hurt, deceased was a passenger being transported for hire by appellant. If therefore the proof fails to show that the relation of carrier and passenger existed at the time Mr. Hurley was run over, there cannot be a recovery in this case in any view of it.

Legal status of employee while transported to and from places of work by employer without *remuneration.* See case of *Bowles* v. *Indiana Ry. Co.,* 87 Amer. State Reports, 279; *Ionnone* v. *N. Y. Cen. R. R. Co.,* 79 Amer. State Reports, 812; *L. & N. R. R. Co.* v. *Stuber,* 54 L. R.

A. (Old Series), page 696; *McGuirk* v. *Shattuck*, 30 Amer. State Reports, page 454; *Vick* v. *N. Y. Cen. R. R. Co.*, 47 Amer. State Reports, page 36; *Toledo & W. Railway Co.* v. *Durkin*, 76 Ill. 395; *Abend* v. *Terre Haute & I. Railway Co.*, 111 Ill. 202; 53 Amer. State Rep. 616; *Seaver* v. *Boston & M. Railway Co.*, 14 Gray 466. We do not find that Mississippi courts have decided this point squarely. A multitude of authority from other states might be cited, but we think the foregoing sufficient.

Under numerous decisions of this court, Hurley was clearly the fellow-servant of the driver, John Seymour. Both were employed by the same master in the general business of building ships. Similar questions have been before this court heretofore, and many authorities might be cited but we will content ourselves with the following:

See *McMaster* v. *R. R. Co.*, 65 Miss. 264, holding that a conductor of one train is the fellow-servant of the employees of another train of the same company, and that the railroad company is not liable for the death of a brakesman of a freight train caused by the negligence of the conductor and other employees on a passenger train. See also *N. O., etc., R. R. Co.* v. *Hughes*, 49 Miss. 258; *Memphis, etc., R. R. Co.* v. *Petty*, 67 Miss. 255; *Lagrone* v. *R. R. Co.*, 67 Miss. 592; *Millsaps* v. *R. R. Co.*, 69 Miss. 423; *Ill. Cen. R. R. Co.* v. *Jones*, 16 So. 300; *I. C. R. R. Co.* v. *Bishop*, 76 Miss. 810; *Bradford Construction Co.* v. *Heflin*, 88, Miss. 314.

The courts have often had occasion to pass on a carrier's liability for injuries sustained by a passenger in jumping off and on moving trains. They all hold that the passenger in so doing is negligent. Referring to decisions from our own state, we find the case of *Bardwell* v. *M. & O. R. R. Co.*, 63 Miss. 574.

In that case, plaintiff leaped from a train moving from six to twelve miles per hour, the conductor having slowed down the train at plaintiff's stop, so that he could jump off. The court held there could be no recovery. In this case, the driver, Seymour, did not know that Hurley

was going to jump, until he had fallen under the wheels. See also case of *Collins* v. *Southern R. Company,* 89 Miss. 375. See also *M. & O. R. R. Co.* v. *Statha,* 42 Miss. 607.

So then, we submit, there could be no liability in this case, even if Hurley had been a passenger, which he was not.

We do not see how the driver could have averted this unfortunate accident. He was not running rapidly, nor recklessly and did not know of Hurley's peril until the wheel struck him. Hurley had evidently jumped clear of the truck, but according to a statement made by witness Brondum, stumbled against some one's heel as he alighted, causing him to fall backward. We cannot say that Hurley would not have jumped off any how, whether the truck stopped or not. But we have it from the driver, uncontradicted, that he was bringing the truck to a stop when the accident occurred. Probably Hurley would not have been hurt, if he had not stumbled on the other man's heel. Certainly appellant was not responsible for that.

*Mize & Mize* and *S. C. Broom,* for appellees.

In the threshold of this case lie the following legal propositions: Was Hurley a passenger of appellant; did the relation of passenger and carrier exist between Hurley and appellant at the time he was hurt? Or did the relation of servant and master exist between Hurley and appellant at the time of the injury?

We submit, emphatically, that the relation of master and servant did not exist while Hurley was being conveyed by said truck to his living place, as we will show hereinafter, and plant ourselves squarely on the first proposition above, to wit: that the relation of passenger and carrier only existed between appellant and said Hurley at said time.

Our analysis of the facts from the evidence is this: That Hurley paid the agent of appellant, the driver of the truck, twenty cents per week for his transportation, which was independent of his contract with appellant to work for sixty-five cents per hour and that this was done at the instance and with full knowledge of the appellant and, under these facts Hurley was a passenger.

Or, if mistaken in this, our contention is that appellant had a general rule to provide its employees with transportation, by means of this truck operated by its own servant and under its control, to and from a fixed place of work in which event he was a passenger.

There can be no dispute but what all the authorities hold that a person who is travelling with another, paying compensation may be, or in whatever amount, for his carriage, is a passenger. Elliot on Railroads, sec. 1578.

In the instant case, Hurley paid the appellant twenty cents per week for his transportation i. e., he paid appellant's agent and driver of the truck, the twenty cents; hence, he was a passenger of appellant.

But, should we be mistaken in this, then we submit that it cannot be successfully disputed that the company had a general rule, as disclosed by the record, to provide its employees with transportation by means of this truck operated by its servant and under its control, to and from a fixed place of work.

There is some authority to the contrary, but the Court will find that they are hopelessly in the minority or are cases in which an analysis will show that a different state of facts exist from those disclosed in the instant case. Without criticising any of the courts holding contrary to our view, will say that most of them have overlooked this point; that is, in cases that state the doctrine contrary to our contention most of them are on facts where the servant is employed concerning duties that call him to different places of business, and, while going to and from these places by transportation furnished by the employer, he is injured, and

are not cases where servants are engaged at a fixed place of work and have completed their work for the day, quit this fixed place of work, and are being transported home by conveyance of the appellant under its rule and custom, as in the instant case, under which facts the servant is no longer in the employment of the master until he actually begins work again.

The great weight of authority is, and we think properly so, that the servant is not a passenger where the facts are such that he has more than one place to work for the master and is being transported free by the master between such places.

The case of *R. R.* v. *Stuber,* 54 L. R. A. (Old Series), 696, cited by appellant, p. 6, of its brief, is a case where a foreman of water supply of a railroad is carried from place to place where some machinery is to be repaired; held by the court to be a fellow servant, and properly so; because he is hurt while *riding* between his place to work and is on duty and under the authority of the master.   The case of *McGuirk* v. *Shattuck,* 30 Am. St. Rep. 454, cited by appellant, and cited by Thompson on Negligence, is a case where a servant was sent for by her master and carried by another servant to her place of work.   The very moment the other servant took charge of her, she became a fellow servant and under the authority of the master, and the court correctly so held.

The case of *Toledo, etc., Ry.* v. *Durkin,* 76 Ill. 395, cited by appellant, p. 7, of brief, is a case of a laborer on a gravel train being conveyed home.   That case went off on the idea that the crew of the gravel train in case of need would have had authority to requisition his services at any point en route; and that the master's control was only dormant while he was in transit.

The case of *Abend* v. *Terre Haute R. R.,* 111 Ill. 202, cited by appellant at p. 7 of brief, is a case where a blacksmith was injured while travelling with a wrecking

crew. In this case the blacksmith was on duty at the time he was injured about the business of his master, and it was in the very nature of his business for the master that he was travelling with this wreck crew. He was correctly held to be the servant and not a passenger.

Now, there are several cases cited by appellant that are against our contention, but we say that they are hopelessly in the minority, and are decisions of courts that have followed on a different state of facts the cases where the facts show that the injured person was actually on duty at the time, though doing nothing but travelling between points, and that the master had the right to requisition his services at any time while in transit.

The case of *Vick* v. *N. Y. Cent.*, 47 Am. St. Rep. 36, cited by appellant at p. 7 of brief, is a case where an employee of a railroad travelling from his home to his post of duty upon the care of the company free of charge, as stipulated for in the contract of service, is held to be not a passenger.

We may assume that this case is authority against us, though hardly so, because there the contract for carriage is stipulated in the contract of employment, which is not at all the case here. 4 Labatt on Master & Servant, sec. 1555, p. 4669 (2 Ed.), says (Subdivision A): "A servant who, at the time of the accident in suit, was being transported in a railway car or other vehicle furnished for the purpose of facilitating the performance of his work, is deemed to have been injured in the course of his employment, and therefore cannot recover if the injury was the result of a risk known to and appreciated by him."

The court will see that the vehicle in the case discussed by Labatt under this doctrine was furnished by the employer for the purpose of facilitating the performance of the work, and follows the line of cases we first set out, as where a pump tender is conveyed

free by the master from his work at one pump to his work at another pump and is injured while in transit. In such case, the conveyance was for the purpose of facilitating the performance of the work.

Labatt then goes on, under subdivision "b" of said section 1555, as follows: " . . . Upon this ground it has been held that no action was maintainable in a case where a laundress was injured by the negligence of the driver of a carriage in which she was being carried to her place of work." This is the case of *McGuirk* v. *Shattuck,* 160 Mass. 45, cited by appellant in his brief.

Now, in the instant case under the contract of employment, there was no provision with reference to his transportation. His contract of employment was to work for sixty-five cents per hour, and that was the end of it. When he checked out for the day at 3.30 there was no further authority of the master over him, dormant or otherwise, until he went back to his work the next time, under his contract by the hour.

Continuing, Labatt says, page 4677: "The train becomes, from this standpoint, one of the instrumentalities furnished for the more efficient performance of his duties, and in using it he is carrying out his contract just as clearly as when he is using any other piece of machinery for the same purpose."

But, says Labatt, under subdivision "3" p. 4679: "Both on principle and authority it is clear that the defense of common employment is not available to the master where the injured person was travelling entirely for his own purpose, and the right of the master to exact the performance of services was not merely dormant but wholly suspended."

Now, we come to our contention which we say Labatt supports under the analysis of the evidence for which we are contending; Labatt, at p. 4680, subdivision "e" sec. 55; *Vick* v. *N. Y. C.,* 47 Am. Rep. 36. Now we will cite some other cases we rely on to support our

contention. *McNulty* v. *Pa. R. R. Co.,* 182 Pa. 479; *O'Donnell* v. *Alleghany Valley R. R.,* 59 App. 239; *Herbert* v. *Portland R. R. Co.,* 103 Me. 315; *Doyle* v. *Fitchburg,* 166 Mass. 492; *N. Y. etc., R. R.* v. *Burns,* 17 Atl. 630; *Enos* v. *Rhode Island, etc., R. R.,* 12 L. R. A. (N. S.) 244; *Dickson* v. *West End Street R. Co.,* 177 Mass. 365, 52 L. R. A. (Old Series) 326; *Todd* v. *Old Colony, etc., R. Co.,* 80 Am. Dec. 49; *Doyle* v. *Fitchburg R. Co.,* 162 Mass. 66; *State to use Abell* v. *Western Maryland R. Co.,* 63 Md. 43; *Doyle* v. *Fitzburg,* 162 Mass. 66; *McNulty* v. *Pa. R. R.,* 182 Pa. 479; *Carswell* v. *Macon, etc. R. R. Co.,* 118 Ga. 826; *St. Louis, etc., R. R.* v. *Waggoner,* 90 Ill. App. 556; *L. N. R. Co.* v. *Scott,* 108 N. Y. 392; *Chattanooga Rapid Transit Co.* v. *Venable,* 51 L. R. A. 886; *Pigeon* v. *Lane,* 80 Conn. 237; *Ellington* v. *Beaver Dam Co.,* 93 Ga. 53; *Russell* v. *Hudson River Co.,* 17 N. Y. 134; *Robertson* v. *Greenleaf Johnson Lumber Company,* 154 N. C. 328, 70 S. E. 630; *Hass* v. *St. Louis R. R.,* 90 S. W. 115; A Missouri case, *Johnson* v. *Texas Central R. R.,* 93 S. W. 433; *Union Packet Co.* v. *McCoe,* 21 Law Ed. (U. S. Sup. Ct.) 705, approved in the case of *Dickinson* v. *West End Ry. Co.,* 59 N. E. 60, *supra.*

As to the general line of authority holding that under the conditions under which Hurley was transported, he is a passenger, and the minority line of authority holding that under such conditions, he is not a passenger, we cite 2 Hutchinson on Carriers (3 Ed.), p. 1158, sec. 1004.

As we have heretofore argued, the relation of master and servant did not exist, because, for it to exist, the master would have had to have authority and control over Hurley at the time he was injured; to have had this, Hurley would have had to be on duty at the time; and we submit that by no stretch of the imagination can Hurley be considered to be on duty when he was killed in front of his boarding place by the

motor truck after he had completed his day's work checked out, and was practically at home.

Next, the relation of host and guest cannot exist; because Hurley was paying twenty cents per week for his passage; and this relation presupposes some hospitality, and there is not much hospitality on a crowded truck carrying men from a shipyard to their boarding place. Nor was Hurley a trespasser, because he was riding, if not for hire, under the rule and custom of the company.

We submit from the foregoing authorities cited by us in support of our contention that he was a passenger clearly shown that the relation of passengers and carrier existed, either on the first or second analysis we have made of the facts in the record, to wit: he was either a passenger for hire, because of his paying the twenty cents per week, or he was a passenger under the rule of the company aforesaid.

Was the appellant guilty of negligence toward Hurley at the time of his injury that contributed to his death? In our discussion of this question, we will state to the court at the outset that appellee's testimony will show that at the time Hurley got off the truck he was in front of his gate at the regular place where he had been in the habit of getting off, and the proper place; that the truck was going at the rate of from two to four miles an hour and as he got off he was caught under the wheel and dragged about fifteen feet and that the driver made no attempt to stop the truck earlier and did not put on his brakes.

Sec. 2860, 3 Thompson on Negligence (2 Ed.), p. 326, lays down the following: "Duty to afford passenger a reasonable opportunity to alight safely. The implied contract to carry safely includes the duty of giving the passengers a reasonable opportunity to alight in safety from the train, and a violation of this part of the company's duty is a culpable negligence for which in case of an injury to a passenger pro-

ceeding from this source, an action will lie. This means a sufficient time for the passenger to alight safely, by the use of reasonable diligence and care, having regard to all the circumstances surrounding him.''

This doctrine is also recognized in this state in *So. Ry.* v. *Kundry,* 40 Miss. 374, Mississippi Reprint Book 20, p. 375, section 2862, 3 Thompson on Negligence.

From the foregoing authorities, the court will see that the degree of duty with reference to stopping for a passenger to alight by the party having the passenger under his control, is a high degree of duty. *Wooten* v. *R. R.* 79 Miss. 36.

Therefore, we say that though Hurley might have been guilty of negligence in getting off the truck while in motion at the regular stop, if he got off there, yet if the truck did not stop at this place it was guilty of negligence which would render appellant liable; and, were there no question involved but failure to stop the truck at the proper place the verdict should be affirmed; but there is a still more important question involved here, in that, after Hurley got caught by the truck, the record shows, or the jury has the right to deduce from the record that the appellant was guilty of the most culpable negligence in going fifteen feet before stopping the truck after the man had hollered, when the brakes were in good condition, and it was not going over two to four miles an hour. If the driver had been paying the slightest attention to his passenger (and the law enjoins on him a high degree of care) he would have learned that the man was under the car and could have stoped the truck almost instantly and before the man was seriously injured. We refer the court to the testimony of Wilson Powell, a disinterested witness and man of standing, superintendent of the waterworks at the time of the injury, who heard Hurley holler although he was two hundred yards away and who testified that he was dragged about fifteen feet by the truck

after he hollered. In this, he is corroborated by other witnesses for appellees.

The Mississippi authorities cited by appellant are not in point, as they are on a different state of facts. *Sollins* v. *So. Ry.*, 89 Miss., is a case where the injured party seized the handhold of the coach before the train stopped as it approached a station where it generally stopped, which is not applicable here. The court will see that the *Bardwell case*, 63 Miss. 574, cited by appellant, is altogether a different state of facts as well as the other Mississippi case cited.

COOK, P. J., delivered the opinion of the court.

Mrs. J. W. Hurley and her children brought this suit against the appellee for the alleged negligent killing of the husband of Mrs. Hurley and the father of her children. The shipbuilding company was engaged in the business of shipbuilding, and its plant was located at Pascagoula. Numerous workmen were employed by this company, and Mr. Hurley, the deceased , was one of the number. Mr. Hurley and a number of the other employees made their home in Moss Point, a nearby town. An arrangement was made whereby the company furnished an automible truck and driver to and from their homes.

The plaintiffs alleged, and for the purposes of this opinion we will assume, that the evidence tends to prove that they paid a small stipend to the company for this service; thus assuming that the company thereby became a carrier for hire. It was also alleged that the driver was reckless; but as the facts of this case do not show, or tend to show, that the injury and death of Mr. Hurley was caused by any reckless conduct of the driver, this averment of the declaration will not influence our conclusions.

Taking the record as a whole, there is very little conflict in the evidence about the deplorable accident

which robbed the wife of a husband and the children of a father. On the date of the injury to Mr. Hurley, Mr. Hurley and a number of other employees were passengers upon the truck, having boarded the truck at the shipyard to be transported to their several homes in Moss Point. When the truck reached the boarding house of Mr. Hurley, and while it was running at a speed of not less than three miles per hour, Mr. Hurley jumped off the truck, and, losing his balance, he fell under the wheels of the machine, receiving injuries which caused his death.

We can find no evidence in the record that the driver was not going to stop at all. At the most, it may be inferred that the driver did not stop in front of the gate, and that he did not intend to stop exactly in front of the gate. It is also shown that the body of Mr. Hurley was dragged about fifteen feet before the truck was stopped and backed off of him. It will never be known why Mr. Hurley jumped from the moving truck. It is, however, assumed by the attorneys for the plaintiff that he jumped because he saw or believed that the truck would not stop just opposite his gate.

We are unable to appreciate the argument that it would be a breach of the contract of carriage for the driver to have passed the gate for a few feet or yards, as it was shown that anywhere near this gate there were no impediments or inconveniences in the way of his getting into his home. As we read the record, it conclusively appears that the driver had shifted his gear and would probably have brought his car to a stop within a half dozen yards of the gate. Assuming, however, that the driver should have stopped his car immediately in front of the gate, and that he did not do so, we must nevertheless reach the conclusion that the efficient and proximate cause of the injury was the voluntary act of Mr. Hurley himself. There can be no reasonable doubt that, had Mr. Hurley remained on the truck for a few

seconds more, he would to-day be living, barring other causes of death.

Again, we are unable to appreciate the validity of the argument that the truck was negligently operated. If we assume that it was the custom to stop the car precisely opposite the gate, and that in this instance the driver neglected to toe the mark, but was going fifteen or twenty yards beyond the gate, this could not be classified as negligence. We think the following cases are all authority for the conclusions we have reached, viz.:  *Bardwell* v. *M. & O. R. R.,* 63 Miss. 574, 56 Am. Rep. 842; *Collins* v. *Southern Ry.,* 89 Miss. 375, 42 So. 167; *Natchez, C. & M. R. R.* v. *Lambert,* 99 Miss. 310, 54 So. 836, 37 L. R. A. (N. S.) 264; *N. O., J. & G. N. R. R.* v. *Statham,* 42 Miss. 607, 97 Am. Dec. 478.

The charge of negligence was not sustained. If it could be said that the driver was negligent, the plaintiff is still without remedy, because the alleged negligence was not the efficient or proximate cause of the injury. Taking this view of the case, the judgment of the trial court will be reversed, and the cause dismissed.

*Reversed and dismissed.*

ETHRIDGE, J. (dissenting).

I dissent from the holding of the majority that the appellant was entitled to a peremptory instruction. The majority opinion holds that the Dantzler Shipbuilding & Dry Docks Company was a carrier of passengers in this case, at least for the purpose of the opinion, and I think this holding is sound and well supported both on the facts and on the authorities.

The decisions relied on in the majority opinion are not applicable to this case for several reasons, the principal one being that contributory negligence as a defense to an action based on negligence for personal injuries is no longer a defense to the action, but merely goes to the mitigation of damages. Chapter 135, Laws

of 1910 (which became effective April 16, 1910), is also set out in Hemingway's Code, sections 502 and 503, which sections, as they appear in Hemingway's Code, read as follows:

"502. Contributory Negligence No Bar to Recovery of Damages—Jury may Diminish Damages.—1. In all actions hereafter brought for personal injuries or where such injuries have resulted in death, the fact that the person injured may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured. (Laws 1910, chapter 135. In effect April 16, 1910.)

"503. Negligence—Question for Jury.—2. All questions of negligence and contributory negligence shall be for the jury to determine. (Laws 1910, chapter 135. In effect April 16, 1910.)"

This statute was not in force at the time the cases arose cited in the majority opinion. It will be necessary, before going into the authorities, to refer more at length to the facts contained in the record than is contained in the statement in the majority opinion.

J. W. Hurley, the husband of appellee Mrs. J. W. Hurley, and the father of the other plaintiffs, was being transported from the shipbuilding plant of the appellant to his boarding house in a motor truck owned and operated by the appellant. When the truck reached the proper place for it to stop for passengers to disembark, it was running at a rate estimated at from two to four miles per hour; some of the witnesses testifying it was running at the rate of four miles an hour and had not stopped. There were five passengers to stop at this place. When the truck got even with the walk leading to the boarding house, these passengers began to jump off; Hurley being one of them that disembarked. He fell, and was thrown under the truck, and was dragged about fifteen feet, being under one of the wheels of the truck, and was so injured

that he died in about five days thereafter. When Hurley fell, he hollered to the driver, and the driver then undertook to stop the truck, but could not bring it to a stop, according to some of the witnesses, until he had gone a distance of about fifteen feet. During this distance between the fall and the stopping of the truck, Hurley made a desperate effort to hold himself in a position to keep the truck from crushing him.

According to the testimony of plaintiffs, a charge of twenty cents per week was charged Hurley and the other passengers for riding on the truck from the plant to the boarding house. Accordingly to some of the witnesses for the plaintiffs, the driver of the truck was a reckless driver, and was running too fast with a load of passengers. According to the testimony of the plaintiffs and of the driver of the truck, it was the duty of the driver of the truck to stop in front of the boarding house, and take on and set down the passengers. The truck was not under such control at the time the deceased fell under it as to bring it to a prompt stop.

Hurley had an expectancy of more than twenty years, and the expectancy of his wife and children all exceeded that length of time. He was earning sixty-five cents per hour and worked about eleven hours per day according to the testimony. The amount that Hurley would have earned during his expectancy at the rate of wages he was receiving would very largely exceed the amount of the verdict.

The nature of Hurley's employment and contract was that he was out of control of appellant when he checked out each day at the plant. After being so checked out, he usually caught the motor truck outside the building, and did so on the occasion of this injury.

The appellant pleaded contributory negligence, and introduced evidence tending to prove contributory negligence on the part of the deceased, and procured in-

structions on the duty of the jury, if it found that deceased was guilty of contributory negligence, to reduce the damage in the proportion that the contributory negligence of the deceased bore to the negligence of the appellant. The verdict was for five thousand dollars.

The opinion of the majority having established the relation of carrier and passenger between the appellant and the deceased, the duties of carrier would fall within the line of authorities in this state which have repeatedly held that it was the duty of the carrier to stop its vehicles a sufficient length of time for a passenger to alight in safety, and that a breach of this duty constituted a tort, and that the damages are measured according to the rules of law governing that class of actions. *Heirn* v. *McCaughan,* 32 Miss.17, 66 Am. Dec. 588; *N. O., J. & G. R. R.* v. *Hurst,* 36 Miss. 660, 74 Am. Dec. 785; *M. & C. R. R.* v. *Whitfield,* 44 Miss. 466, 7 Am. Rep. 699.

In the last case cited it was held that a passenger who has been injured by the negligence of the company's servants is entitled to full compensation for his injury. It was also held in this case that, where the gist of the action is negligence, the question of whether defendant had been negligent, so as to subject him to liability, and whether the plaintiff had been negligent, so as to exempt the defendant from liability, is one of fact for the jury, under the instructions of the court as to the applicable principles of law. This case, of course, was decided before the contributory negligence statute was enacted, and even before its enactment, under this authority, the jury were authorized to determine the question in this case as it did in favor of the plaintiff from the facts of the case.

In the case of *Y. & M. V. R. R.* v. *Hardie,* 106 Miss. 436, 64 So. 1, this court held that, where a passenger was by the negligence of the railroad employees carried yond her point of destination, and on being returned

to this point, some three hours later, had to go through a rainstorm to her home, and was made sick thereby, the railroad company was liable for the injuries sustained by her on her journey from the railroad to her home, and the verdict for five thousand for such injuries was affirmed by this court.

In *L., N. O. & T. R. R.* v. *Mask,* 64 Miss. 738, 2 So. 360, this court held the carrier liable on a similar state of facts.

In *Humphries* v. *I. C. R. R.,* 70 Miss. 453, 12 So. 155, this court held, where a railroad company failed to stop its passenger train, which as a rule did not stop at the station of plaintiff's residence in this state, if there was a custom for the train to stop here for the accommodation of passengers holding a ticket purchased from a connecting railway in other states, that it was the duty of the railroad to stop its fast train, and to permit plaintiff to get off, and that it was error to grant a peremptory instruction for the railroad in such case.

In the case of *Southern Railway Co.* v. *Kendrick,* 40 Miss. 375, 90 Am. Dec. 332, it was held that the obligation of a common carrier as to passengers is to allow sufficient time and opportunity at the point of destination to leave the conveyance by which transported, and that it was the duty of the carrier to have the names of the different stations announced upon arrival, and to stop a sufficient length of time to allow passengers to get off without danger of injury to their person. It was also held that in actions of tort the jury are vested exclusively with the power to determine the amount of damages, and they in their discretion are to weigh all the circumstances of the case and to determine accordingly.

In the case of *M. & O. R. R.* v. *McArthur,* 43 Miss. 180, the passenger on a freight train, which was not regularly, but only occasionally, used to carry passengers, paid his passage money. The train carried him

five miles beyond his destination, and put him off at another station, and he had to walk back to his destination. He had chronic rheumatism and was exposed to the weather. Held, on demurrer to the evidence, that the passenger was entitled to recover.

In the case of *Thompson* v. *N. O., J. & G. R. R.,* 50 Miss. 315, 19 Am. Rep. 12, plaintiff went aboard the cars, paid fare to Bogue Chitto, and the train did not stop, but ran past for two miles to a water tank. Thompson demanded the train should return. The conductor was courteous and polite, and submitted the option to Thompson to leave the train at the tank or to ride to the next station and return to Bogue Chitto free of charge. Thompson accepted the latter alternative and returned to the station, but the train went beyond the station, and landed him one hundred and fifty yards beyond, and he voluntarily jumped off without injury. On the trial counsel for the defendant demurred to the testimony, and the trial court sustained the demurrer, and this court held that it was error; that the right of action was complete, even though no personal injury was sustained. At page 318 of 50 Miss. (19 Am. Rep. 12), in the opinion, the court said:

"It is insisted, in behalf of the plaintiff in error, that upon the facts the right of action is absolute and cimplete; and counsel press the distinction between this right and the amount of damages which may be assessed by the jury. On the other had, it is urged that this is, on its face, a speculative prosecution, and ought not to be sustained by the courts."

The court cited *Heir* v. *McCaughan,* 32 Miss. 17, 66 Am. Dec. 588, *supra,* and then said: "Thompson, in the case at bar, makes no complaint of mental or bodily suffering, nor of danger from exposure to the weather or otherwise."

The court then discussed previous cases and concluded the opinion at page 320 of 50 Miss. (19 Am. Rep. 12) in the following language:

"Upon the evidence, the plaintiff acquired a technical right of recovery, but the rule as to punitive damages does not apply. Hence, although the damages are only nominal, nevertheless the cause of action ought to have been sustained, and a writ of inquiry awarded, to be executed under the appropriate directions of the court in such a case, as to which, vide 2 Red. L. of Railway, 220 *et seq.;* S. & R.  646 *et seq.;* Sedgwick, 90, 128, note, 413, note, 665, note."

I submit that this authority is a parallel authority with the case here, with the single difference that Thompson was not injured, while in the present case the man was injured to such an extent that he suffered intensely for five days and then died.

In *White* v. *Railroad,* 97 Miss. 91, 52 So. 449, 55 So. 593, this court, speaking through Judge Anderson, at page 99 of the Mississippi Report of this case (55 So. 594), defined the duty which the carrier owned to the passenger at common law as follows:

"According to the common law the carrier owes the passenger the utmost degree of care for his safety, regardless of the character of the car or train on which he is being carried.  There is no distinction in this respect between freight trains and regular passenger trains, provided such freight trains are used for the carriage of passengers.  At common law there is only one class of trains in the operation of which the carrier is relieved from the exercise of the utmost degree of care for the safety of persons traveling on such trains, and that is those trains which are not intended for and which do not carry passengers."

In *Dorrah* v. *I. C. R. R.,* 65 Miss. 14, 3 So. 36, 7 Am. St. Rep. 629, this court held that a railroad company is liable to a passenger for actual damages for failing to announce or give notice in some way of the station, and to stop its trains long enough for him to get off with safety.

In *Georgia Pacific Ry. Co.* v. *West,* 66 Miss. 310, 6 So. 207, this court held that ordinarily the employees in charge of the train do not owe the duty to a passenger on board to stay longer than for them to sufficiently and safely and conveniently get off; but even after the usual stop it is negligent for them to start the train if they know, or have reason to believe, that a passenger in the act of alighting, or that the passenger intending to alight, from age or infirmity requires a longer time than usual to alight. It was also held in this case that the court properly refused to instruct that it was contributory negligence *per se* for a passenger to alight from a train on the platform of the station if the train is in motion, where the only evidence of the train's failure to stop is that it was barely moving, and this is coupled with the statement that the passenger was being assisted to alight by an employee in charge of the train. The instruction refused in that case read as follows:

"(6) The court instructs the jury that, if they believe from the evidence that plaintiff attempted to get off the train of defendant onto the platform at Burdette while the train was in motion, then the plaintiff's own negligence contributed to occasion her falling, and they will find for the defendant."

In *C., St. L. & N. O. R. R.* v. *Scurr,* 59 Miss. 456, 42 Am. Rep. 373, this court laid down the rule of the degree of responsibility as follows:

"Common carriers are subjected by law to a degree of responsibility unknown to other callings, but the measure of damages for nonperformance of their duties is the same as in other persuits, to wit, compensation for carelessness or thoughtlessness, and exemplary punishment for recklessness, willfulness, or insult."

This has been cited with approval in a large number of cases in this court. See authorities cited in

the second syllabus of the reprint Mississippi Reports. In *King* v. *Y. & M. V. R. R.*, 87 Miss. 270, 39 So. 810, this court held that a passenger by alighting from a slowly moving railroad train is not, under all circumstances, guilty of such contributory negligence *per se* as will preclude him from recovering from the railroad company for injuries.

The degree of care required and liability as to passengers boarding or alighting from vehicles is stated in 10 Corpus Juris, p. 924 section 1348, as follows:

"The carrier is bound to exercise care in securing the safety of the passenger while boarding and alighting from its cars or other conveyances, and the degree of care required in the discharge of this duty is the highest care, or the care which a very prudent person would use under the circumstances; that is, that high degree of care which is required with reference to the transportation of passengers. And where a carrier misleads a passenger with reference to the time, the place, and the safety of boarding or alighting, it is liable for the injuries sustained; but the carrier is not an insurer of the passenger's safety in this regard, and if the carrier, through its agents and employees, uses proper care for the safety and protection of a boarding or an alighting passenger, it is not liable for injuries that he may sustain while getting or leaving the car, particularly where he does so by an unusual mode of ingress or egress, nor is it liable for injuries received by him after it has performed its duty, and he has safely left the car."

In 10 Corpus Juris, at page 843, section 1283, the rule is laid down that, in case of the breach by the carrier of its duty or contract to transport a passenger, the latter ordinarily has a choice of remedies, and may sue either in tort or for breach of the contract.

In 10 Corpus Juris, p. 854, the rule as to the exercise of care is stated as follows:

"Sec. 1295. 2. Statements of Care Required.—a. In General.—Although the classification of negligence by degrees has been condemned by high authority, various forms of expression have been used to indicate the degree of care, skill, and diligence which a carrier of passengers must exercise in transporting a passenger, such as that it must exercise 'the highest degree of care, prudence and foresight,' 'the greatest possible care and diligence,' 'the utmost care and diligence,' or 'extraordinary care and caution.' In the proper use of the term, however, 'negligence' is simply the failure to use the amount of care, skill, and diligence required by the nature of the undertaking and the circumstances of the case, and speaking in this sense of the degree of care required of the carrier of passengers who has intrusted to it the personal safety of the passenger, it is evident that, whatever form of expression is used, the skill, care, and diligence should be apportioned to the nature and risk of the undertaking, in view of the nature of the means of conveyance employed, and sometimes involves custom and knowledge, actual or attributable to one or the other of the parties, although it has been held that the degree of care required under particular circumstances and conditions cannot be lessened by the carrier's custom in regard to particular acts. Ordinary care imports all the care which the peculiar circumstances of the place or occasion reasonably require, and this will be increased or diminished as danger of accident or injury is increased or diminished. Therefore, while it might be proper in one sense to say that the care required is that which an ordinary careful and prudent person would exercise in such business, yet, on the other hand, the nature of the business requires the use of a very high degree of care, prudence, and foresight, and it would be misleading to say that ordinary and reasonable care was sufficient to relieve the carrier from the charge of negligence, although

it has been held that, in view of the modern tendency to refuse to recognize degrees of negligence, the care required of the carrier may be expressed by the terms 'due care,' 'reasonable care,' or 'ordinary care,' particularly in regard to dangers which are not usually incident to the mode of conveyance used. A railroad company owes to a passenger a different and a higher degree of care than to mere trespassers or strangers, or to travelers at highway crossings, or to one of its servants.''

In 6 Cyc. 585, it is stated where a ticket is sold on a particular train for a specified destination or a passenger on a train paid the conductor for transportation to a specified destination, the carrier is under obligation to stop the train at that point to allow the passenger to alight, and a refusal to carry him on that train to such destination will be a beach of the contract.

At page 586, 6 Cyc., heading, "Duty to Stop Train at Platform," it is said:

"The carrier should stop the train at the usual platform for discharging passengers at the place of destination, and cannot require the passenger to alight at an unusual or unsuitable place. It is also obligatory that the train be stopped for a reasonable length of time to allow passengers, in the exercise of due diligence, to get off without danger.''

In 6 Cyc. 594, heading, "Liability as Affected by Means of Transportation," it is said:

"So large a proportion of the transportation of passengers is by means of railroads operated by steam that the general rules of liability as developed in the decided cases have reference to such carriage, and no particular discussion of the cases further than that given in the preceding paragraphs is necessary. Undoubtedly the same rules govern the liability of carriers operating steam vessels. In the operation of freight trains, however, somewhat greater peril is involved to passengers riding thereon than is involved in the

operation of passenger trains. Nevertheless, the rule of liability—that is, the requirement as to the exercise of a high degree of care and foresight—is the same. The passenger, by assuming to ride by this means of conveyance, does not relieve the carrier from the obligation to exercise great care for his safety.''

In 6 Cyc. p. 595, heading ''Stagecoaches,'' it is said:

''The principles governing the liability of passenger carriers seem first to have been laid down in stagecoach cases, and it was early settled that the owner of a stagecoach is not an insurer of the safety of his passengers, and is liable only in case of negligence. But the carrier by stagecoach is bound to exercise the greatest care and diligence, and is liable for the slightest negligence of himself or his servants.''

In *Railway Co.* v. *Hanes*, 69 Miss. 160, 13 So. 246, this court laid the rule down that, where the declaration contains no specification of the nature and kind of damage claimed, only such as actually and proximately arise out of the act complained of can be recovered, does not apply in actions for tort.

In *Railroad* v. *Allbritton*, 38 Miss. 242, 75 Am. Dec. 98, it is held that a railroad company impliedly warrants that its engineers and other employees are possessed of due skill, are competent and faithful, and the railroad company is liable under all circumstances for injuries caused by their negligence.

In *Toler* v. *Railroad*, 31 So. 788, a case where the plaintiff's testimony showed that she went immediately to the steps of the car when the station was announced, and it being dropped, and she thinking the train had stopped, got off and was injured, the train being in motion, the testimony that thereafter the train was again stopped by the ringing of the bell to let off other passengers, presented a case for the jury as to the negligence of stopping too short a time.

In the case of *Fore* v. *Railway Co.*, 87 Miss 211, 39 So. 493, 690, this court held that a circuit judge may grant

119 Miss. —32.

a new trial if the verdict be against the weight of the evidence, but is warranted in granting either party a peremptory instruction only when the evidence is favorable to either party, conceding it to be true, discloses no legal right in him, or fails to maintain the issue in his favor.

Under the facts in the present case there was ample evidence to warrant the jury in finding that the driver was careless, and, indeed, it seems to me that this very carelessness of the driver resulted in the injury to the deceased. The driver not only failed to stop, but he did not have his car under the control that it should have been under the circumstances. ' If the truck was only going three or four miles per hour, and if he had had his appliances properly adjusted to control the car, it could have been stopped in much less distance than fifteen feet.

The majority of the court say that the negligence of the deceased in getting off a moving car was the proximate cause of his death. In my opinion the proximate cause of his death was being dragged and crushed by the truck, which the appellant negligently failed to stop. If the car had been stopped, in the discharge of the duty of the appellant to stop it, the injury would not have occurred at all. It was not the fall that killed the deceased. It was the moving truck, being moved by the negligence of the appellant. At most, the deceased was guilty only of contributory negligence. His fall contributed to the injury, but was not the immediate cause of his injury. The sections of Hemingway's Code above referred to should control this case.

The cases referred to in the majority opinion are not analogous to the present case, and all of them recognize a right of nominal damages for the failure to stop the train. I cannot see how the injury in the present case can be disconnected from the neligence of the company in failing to stop the truck at the proper

place, and also for the failure to have the machinery of the truck adjusted so as to bring it to an immediate stop in case of necessity.

In the case of *Bardwell* v. *Railroad,* 63 Miss. 574, 56 Am. Rep. 842, the carrier was under no duty to stop its car at the place where the plaintiff jumped off, and the conductor had no right to bind the company in advising him to jump; the company being only bound to stop it at the station to which plaintiff had bought a ticket.

In the case of *Collins* v. *Railroad,* 89 Miss. 375, 42 So. 167, there was an attempt by a person to board a moving train. Of course, the railroad company was not responsible for his boarding a moving train, or undertaking to disembark before the train stopped.

In the case of *Railroad* v. *Statham,* 42 Miss. 607, 97 Am. Dec. 478, the court expressly recognized the duty of the railroad company to stop the train sufficiently long for passengers to get off. At page 614 of 42 Miss. (97 Am. Dec. 478) the court said:

"They should have the stations announced; they should stop the train sufficiently long for the passengers for each station to get off. When this is done, their duty to the passengers is performed."

The case was reversed because of the instructions of the court. The court said in that opinion at page 629 of 42 Miss. (97 Am. Dec. 478):

"We would not disturb a verdict for damages, where it was not apparent to us that the jury had either misapplied the law, or misunderstood the facts, or had been influenced by their prejudices or passions, rather than by an observance of the law and the facts of the case."

The contention in that case was, or rather the suit was founded upon, the proposition that the plaintiff was sick and needed assistance to get from the platform, and that the conductor knew he was unable to get off without assistance. There was a verdict for

three thousand, two hundred and seventy-five dollars in that case. Speaking of the phase of the evidence bearing on the plaintiff's sickness and the carrier's duty to sick persons, the court said:

"Railroad cars are not traveling hospitals, nor their employees nurses. Sick persons have the right to enter cars of a railroad company; as common carriers of passengers, they cannot prevent their entering their cars. If they are incapable of taking care of themselves, they should have attendants along to care for them, or to render them such assistance as they may require in the cars, and to assist them from the cars at the point of their destination."

This presents an entirely different case from the present controversy, and the action was not maintained because of the want of duty on the part of the carrier to look after a sick person.

HOLDEN, J., concurs in this dissenting opinion.